IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MAPLES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 07-C-6725 |
| v. | ) | |
| | ) | |
| | ) | Judge Castillo |
| ILLINOIS BELL TELEPHONE | ) | Magistrate Judge Nolan |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiffs, the International Brotherhood of Electric Workers, AFL-CIO. Local 21 (the "IBEW" or the "Union") and a group of current or former Union Stewards, have filed a two-count Complaint against Defendant, Illinois Bell Telephone Company ("Illinois Bell" or the "Company"), alleging violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA").[1]  In Count I of the Complaint, the Plaintiff Employees claim that Illinois Bell interfered with their FMLA rights by denying them medical leave, and disciplined them in retaliation for taking FMLA leave.  (Compl. ¶¶ 11-15.)  In Count II of the Complaint, the IBEW seeks to compel arbitration of three

---

[1] The Union Stewards who are plaintiffs in this matter -- Deborah Maples, Donna Stoner, Lavonne Purkey, Graciela Rivera, Louella Byrnes, and Michael O'Connor – are referred to collectively as "the Plaintiff Employees."  The Plaintiff Employees and the IBEW are referred to collectively as "Plaintiffs."

grievances the Union brought on behalf of Plaintiffs Stoner and Byrnes. (Compl. ¶¶ 17-26).

At the core of the dispute between the Plaintiffs and Illinois Bell is whether time spent by the Plaintiff Employees in performing union-related activities, which is not paid by the Company, should count in determining whether they have satisfied the FMLA's eligibility requirement of working at least 1,250 hours during the 12 months preceding a leave request. 29 U.S.C. §2611(2)(A)(ii). If non-paid union time does not count under the statute, and the Plaintiff Employees do not otherwise satisfy the eligibility requirement, they have no claim that Illinois Bell wrongfully denied them FMLA leave.

Pursuant to the Court's January 29, 2008 Order, Illinois Bell moves for summary judgment in its favor on the FMLA eligibility issue; that is, that the Plaintiff Employees non-paid union time does *not* count as "hours of service" for purposes of determining their eligibility for FMLA leave. Illinois Bell is entitled to such a ruling based on the applicable law and undisputed facts.

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in Defendant's Statement of Undisputed Facts filed with this memorandum.

## ARGUMENT

**I.     THE PLAINTIFF-EMPLOYEES' NON-PAID UNION TIME DOES NOT COUNT AS "HOURS OF SERVICE" FOR PURPOSES OF SATISFYING THE FMLA'S 1,250-HOUR ELIGIBILITY REQUIREMENT UNDER 29 U.S.C. §2611(2)(A)(ii)**

### A.     The FMLA's "Hours of Service" Eligibility Requirement

Congress enacted the FMLA to permit certain eligible employees to take leave for their own serious health condition, for the birth or adoption of a child, or for the care of

2

qualifying family member who has a serious health condition. 29 U.S.C. §2612(a)(1). The FMLA defines an "eligible employee" as an employee who has been (1) employed for at least 12 months by the employer; and (2) employed "for at least 1,250 *hours of service* with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(ii) (emphasis added). In establishing these eligibility requirements, Congress intended that leave not be mandated for employees who did not provide a minimum amount of service to their employers. 29 U.S.C. § 2601(b)(1)-(3).

The FMLA does not define "hours of service." The statute instead provides that "[f]or purposes of determining whether an employee meets the hours of service requirement … the legal standards established under [the overtime provision of the Fair Labor Standards Act, 29 U.S.C. § 207] shall apply." 29 U.S.C. § 2611(2)(C). Additionally, the Department of Labor's regulations implementing the FMLA provide that:

> Whether an employee has worked the minimum 1,250 hours of service to qualify for leave under the FMLA is determined according to the principles established under the Fair Labor Standards Act ("FLSA") for determining compensable hours of work (see 29 C.F.R. § 785). The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA.

29 C.F.R. § 825.110.

### B.    Illinois Bell Counts Time Spent Adjusting Grievances As Hours Of Service For FMLA Eligibility Purposes

The FLSA also does not define what activities constitute "hours worked" under the Act.[2] The only DOL regulation under the FLSA that addresses whether union-related activity constitutes hours worked provides as follows:

---

[2] The FMLA uses the term "hours of service," 29 U.S.C. § 2611(2)(A)(ii), whereas the FLSA refers to "hours worked," 29 U.S.C. § 203(o), and "hours of employment," 29 U.S.C. § 207(e)(2).

> Time spent in adjusting grievances between an employer and employee during the time the employees are required to be on the premises is hours worked, but in the event a bona fide union is involved the counting of such time will, as a matter of enforcement policy, be left to the process of collective bargaining or to the custom or practice under the collective bargaining agreement.

29 C.F.R. § 785.42. There are no cases interpreting this regulation, specifically, the terms "time spent adjusting grievances between an employer and employee." However, terms should be interpreted narrowly to mean only the decision-making phase of the grievance process based on their settled meaning in federal labor law.

"Adjusting grievances" is a term of art under federal labor law. The National Labor Relations Act ("NLRA") defines "supervisor" as a person who has independent authority "to adjust their [employees'] grievances." 29 USC § 152 (11). In determining whether an individual has that authority, the National Labor Relations Board ("NLRB") distinguishes between the act of exercising authority to resolve problems, and the acts of receiving an employee question or complaint, reporting it to someone with decision-making authority, and communicating the decision to the grievant. *See, e.g., Ken Crest Services*, 335 NLRB 777, 778-779 (2001) (ruling that "adjustment of grievances" did not include "relaying, or offering assistance in relaying, the grievance to upper management or simply offering advice or suggestions," or resolving personality conflicts or 'squabbles' between employees"); *Avante at Wilson, Inc.*, 348 NLRB No. 71, 2006 WL 3146785, at *3-4 (2006) (staff nurses did not have authority to resolve problems or adjust grievances); *Northern Montana Health Care*, 324 NLRB 752, 754 (1997) (charge nurse who presents a supervisor "with conflicts, discuss[es] the problem with her and go[es]

---

*See also* 29 C.F.R. §§ 778.216, 785.1-.9. All of these terms appear to be interchangeable. *Johnson v. Ameritech, Inc.*, 2003 WL 684608, *2 (N.D.Ill. 2003).

4

back to the unit and tr[ies] to resolve them" has not adjusted a grievance); *U.S. Postal Service*, 309 NLRB 13 (1992) (discussing the grievance process *prior* to actual adjustment of the grievance by a decision-maker).

Similarly, in evaluating whether a union has fulfilled its duty of fair representation, the NLRB also distinguishes between grievance adjustment and grievance investigation and evaluation. *See, e.g., Nestle Purina Petcare Co.*, 3437 NLRB No. 91, 2006 WL 2400758, at *3 (2006) (discussing that a union must evaluate a grievance before it can present the matter for adjustment); *Indiana & Michigan Elec. Co. v. NLRB*, 599 F. 2d 227, 231 n.9 (7th Cir. 1979) (processing grievance contrasted with employer's "failure to adjust grievances").

The Seventh Circuit Court of Appeals has likewise recognized that "adjustment" is the authoritative decision to grant, deny, or compromise the grievance, not the investigative process or initial discussions which may lead to that decision. *See, e.g., Johnson v. Bodine Elec. Co.*, 142 F. 3d 363, 365 (7th Cir. 1998) (the "adjustment" of a grievance was the decision, not the process); *NLRB v. General Steel Erectors, Inc.*, 933 F. 2d 568, 569-570 (7th Cir. 1991) (holding that a plant superintendent with the power to decide grievances could not participate in the union's decision "whether to process a member's grievance"); *Carpenters Local No. 1027, M.C.-I. Div v. Lee Lumber and Bldg Material Corp.*, 2 F. 3d 796, 799 (7th Cir. 1993) (explaining that an arbitrator is supposed to adjust the grievance after it has been filed, which plainly suggests that the filing process (including a union's investigation as to whether to file) is not the same as grievance adjustment).

Thus, under federal labor law, "adjusting grievances" refers to the outcome of the grievance process, i.e., granted, denied, or compromised.[3]    It does not include investigation, research, strategy discussions, or any other preparation for actual decision-making about the outcome of a grievance.[4]    *See U.S. Postal Service*, 309 NLRB at 22 (1992) ("Respondent will be ordered to adjust in favor of the grievant").   In using the terms "adjusting grievances" in 29 C.F.R. § 785.42, the DOL must have intended that the terms have the same narrow meaning as in settled labor law.

Furthermore, applying the meaning ascribed to "adjusting grievances" in labor law in interpreting 29 C.F.R. § 785.42 is consistent with the words of the entire regulation.   It is a cardinal rule of statutory construction that in construing a statute, "no clause, sentence, or word shall be superfluous, void, or insignificant."   *TRW Inc. v. Andrews*, 534 U.S. 19, 449 (2001).   The same rule applies to administrative regulations. *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 476 (7th Cir. 1999). In the regulation, the terms "adjusting grievances" are modified by the phrase "between an employer and employees."   Thus, under settled rules of construction, the regulation

---

[3]    Notably, the meaning of grievance adjustment under labor law is consistent with the standard definition of adjust, which means "to bring to a more satisfactory state: (1):  SETTLE, RESOLVE, (2):  RECTIFY."  www.merriam-webster.com.  Applying this definition, adjusting a grievance is limited to the act of resolving the grievance; it does not encompass the process leading to that resolution.

[4]  In contrast, the NLRA defines a "labor organization" as an employee group with responsibility for "dealing with" employers concerning grievances and other matters.  29 USC § 152 (5).  The Supreme Court has held that the term "dealing with" is broad term that encompasses negotiation of a collective bargaining agreement, presenting grievances, and making recommendations as to operations. *NLRB v. Cabot Carbon Co.*, 360 U.S. 203, 211 (1959).  It follows that "dealing with" is a far broader concept than adjusting grievances." *See Electromation, Inc.*, 39 NLRB 990, 1007-1008 (1992), *enf'd* 35 F.3d 1148 (7th Cir. 1994) (employee committee found to be a labor organization).

must be read to refer to the give-and-take negotiation between an employer and an employee (or the employee's representative) in resolving a grievance.

In sum, 29 C.F.R. § 785.42 requires that time spent by employees "adjusting grievances" be counted as hours worked, unless a collective bargaining agreement or custom and practice requires otherwise. The regulation should be interpreted narrowly to include only time spent trying to resolve, i.e., adjust, a grievance with an employer. Illinois Bell pays IBEW stewards for all time spent conferring with Company representatives for purposes of processing grievances pursuant to Article 11.06 of the 2004 IBEW CBA, including time spent adjusting grievances. Illinois Bell also counts such time for purposes of determining IBEW stewards' FMLA eligibility. (Def.'s Facts ¶¶ 5, 9, 21). Accordingly, in calculating IBEW stewards' FMLA eligibility, Illinois Bell counts all time spent on union-related business that it is required to count by law.

**C.    Time Spent In Union Activities Other Than Adjusting Grievances Is Not Hours Worked Under The *Tennessee Coal* Standard And Need Not Be Counted Toward FMLA Eligibility**

Union activities other than adjusting grievances fall outside 29 C.F.R. § 785.42. Whether the time spent in such other activities is "hours worked" under the FLSA is determined by whether the activity is "controlled or required by the employer *and* pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (emphasis added). *See also Plumley v. Southern Container, Inc.*, 303 F.2d 364, 372 (1st Cir. 2002) ("hours of service" includes "only those hours actually worked in the service and at the gain of the employer").

Under the 2004 IBEW CBA, IBEW stewards are not paid for time spent investigating grievances or preparing for grievance meetings with Company representatives. Nor are they paid for time spent performing administrative duties for the union, including attending union meetings and training classes. (Def.'s Facts ¶ 5; Peterson Decl. ¶ 5, Ex. 1 (Articles 11.09-11.11)). Such MXUU-coded time is neither for the predominant benefit of Illinois Bell, nor is it controlled or required by Illinois Bell. Indeed, grievances are complaints against the Company, so time spent investigating and preparing them is certainly not for the Company's benefit. Furthermore, IBEW stewards are not required to notify Illinois Bell of what they do during time coded as MXUU. (Def.'s Facts ¶ 13). Indeed, the NLRA prohibits an employer from interfering with, restraining or coercing stewards in the exercise of their rights to engage in union business. 29 U.S.C. §158(a)(1).

In *Koontz v. USX Corp.*, 2001 WL 752656 (E.D. Pa. 2001), one of the plaintiffs claimed that time he spent conducting union business – which accounted for 33% of his time – should count as hours worked for purposes of calculating his eligibility for FMLA leave. The district court rejected the argument, noting that the employer neither tracked nor compensated the hours employees spent performing union business. *Id.* at *8.

In *Local 1605 Amalgamated Transit Union v. Central Contra Costa County Transit Authority*, 73 F.Supp.2d 1117 (N.D. Ca. 1999), union committee members sought compensation for time spent negotiating their collective bargaining agreement. The district court held that the *Tennessee Coal* standard, and not 29 C.F.R. § 785.42, applied because collective bargaining activities are "not sufficiently analogous to the adjustment of grievances." *Id.* at 1122. The court found that the employer neither required nor

8

controlled the union's collective bargaining activities, noting that the employer could not select the union's bargaining representatives, dictate the extent of the union's participation in negotiations, or discipline union officials for not participating. *Id.* at 1122-1124. The court also found that the collective bargaining activities were for the primary benefit of the plaintiffs and the union members they represented and not the employer. *Id.* at 1123-1124. Accordingly, the court ruled that time spent in collective bargaining was not compensable "hours worked" under the FLSA. *Id.* at 1124. *See also Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163 (D.C. Cir. 1975) (hours spent by employees accompanying OSHA inspectors in workplace inspections were not hours worked under the FLSA because such activities were not controlled by the employer, and although the employer ultimately benefited from the safety improvements resulting from OSHA's inspections, the employees were the primary beneficiaries of the time spent walking around with the inspectors).

Furthermore, the FLSA expressly states that payments made for occasional periods when no work is performed due to vacation, holiday, illness, and other similar causes are not considered "hours of employment" under the FLSA. 29 U.S.C. §207(e)(2). Given that paid leave is not considered hours worked, it follows logically that unpaid leave for union business should likewise not be considered hours worked. *See Nelson v. City of Cranston ex rel. McAteer*, 116 F.Supp.2d 260, 267 (D.R.I. 2000). *See also* Dep't of Labor, Op. Ltr. FMLA-18 (November 15, 1993) (paid or unpaid leave, sick days, holidays and sabbatical leave do not count towards the 1,250 hours worked requirement) (attached).

Applying the above-referenced authority, time spent on union-related business, other than adjusting grievances, should *not* count as "hours of service" for FMLA eligibility purposes. Such activities are not controlled by Illinois Bell, and are not for Illinois Bell's primary benefit. Indeed, giving IBEW stewards leave to engage in union business is equivalent to vacation or sick time, when employees are performing no work for the Company. Accordingly, the Court should find that the Plaintiff Employees are not entitled to hours credit for unpaid union time (i.e., MXUU-coded time) in calculating their FMLA eligibility.[5]

**D.    Requiring Illinois Bell To Count Time Spent
         Transacting Union Business For FMLA Eligibility
         Purposes Is Contrary to Congressional Intent**

As one court of appeals aptly noted, "[t]he FMLA is a carefully calibrated compromise that balances the legitimate interests of both employers and employees." *Plumley*, 303 F.3d at 372 (citing 29 U.S.C. § 2601(b)). In striking this balance, as stated above, Congress decided to provide leave only to *eligible* employees. *Id.* The bill first proposing family and medical leave included no eligibility requirement based on hours of service.[6] Each subsequent version of the bill, however, increased the required period of employment before eligibility for leave.[7] Those changes were made at the behest of the

---

[5]  Notably, during collective bargaining negotiations in 2001 and 2004, the Communications Workers of America ("CWA"), which also represents Illinois Bell employees, bargained with Illinois Bell for an agreement to count unpaid absences for union business as "hours worked" for purposes of calculating FMLA eligibility for its members. Illinois Bell also offered to bargain with the IBEW over the issue, but no agreement has been reached. (Def.'s Facts ¶¶ ___).

[6] H.R. 2020, 99th Cong. (1985) (no requirement as to length of service for eligibility).

[7] H.R. 4300, 99th Cong. (1985) (employee eligible only after either three months of continuous service for the same employer or at least 500 hours of service, whichever occurs first); S. 345, 101st Cong. (1989) (employees eligible after twelve months of work and 900 hours of service within twelve months); H.R. 770, 101st Cong. (1989) (employees eligible after twelve months of work and 1000 hours of service).

business community which was concerned that employers would have to incur the costs of an employee's absence when the employee had made only a limited contribution to the employer's business.[8]  The version of the family and medical leave bill that was ultimately enacted into law as the FMLA requires that an employee provide at least 1,250 hours of service to the employer during the 12 months preceding the employee's leave request. 29 U.S.C. §2611(2)(A)(ii). The FMLA's legislative history makes clear that this eligibility qualification is intended to make certain part time and seasonal employees ineligible for family and medical leave. S. Rep. No. 103-3 at 23; H.R. Rep. No. 103-8(I) (1993).

For FMLA eligibility purposes, Illinois Bell gives IBEW stewards hours credit for some union-related activities (i.e., the paid, MXUP time), but not for other union-related activities (i.e., unpaid, MXUU time).  To require Illinois Bell to give IBEW stewards credit for every minute they spend transacting union business, including performing administrative duties and attending union meetings, would frustrate Congress's intent and the careful balance Congress struck between the needs of employees and employers in providing for family and medical leave.  Indeed, Illinois Bell does not require the Plaintiff Employees to serve as IBEW stewards; it is their choice.  If their stewardship prevents them from becoming eligible for leave that they need, they have the option of declining a steward position.  Alternatively, the IBEW could reduce the amount of union-

---

[8]  See H.R. Rep. No. 99-699 (1985) ("Representatives of the business community have said that there is a need... for a reasonable 'probationary period' before new employees become eligible for leave..."); H.R. Rep. No. 101-28, pt. 1, at 24-25 (1989) ("Several other changes have been made... An employee is eligible for leave only after having worked for at least 1,000 hours and having been on the job 12 months... It is the Committee's belief that the bill properly accommodates the legitimate concerns of the business community while providing America's employees basic leave and job securing rights when facing a period of great concern to their family.").

related business they are required to perform – allowing them to perform more work for Illinois Bell – so that they satisfy the FMLA's minimum hours of service requirement.

## II.    THE PLAINTIFF EMPLOYEES ARE NOT PERMITTED TO STACK TIME WORKED FOR BOTH ILLINOIS BELL AND THE IBEW UNDER A "JOINT EMPLOYER" THEORY

Because time spent transacting union business does not constitute hours worked for Illinois Bell, Plaintiffs are likely to argue, as they have previously in communications with the Company, that such time should be "stacked" with their hours worked for the IBEW on that theory that Illinois Bell and the IBEW jointly employ the Plaintiffs Employees.  This argument has no support in law or fact.

The FMLA's regulations provide that "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA."  29 C.F.R. § 825.106(a).  The regulations further provide:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship will be considered to exist in situations such as:
> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
> (2) [w]here one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> (3) [w]here the employers are not completely dissociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. §825.106(a).  Whether a joint employment relationship exists "is not determined by the application of any single criterion, but rather the entire relationship is to be in its totality."  29 C.F.R. § 825.106(b).

As one court in this district noted, "[t]he regulations do not provide much guidance to assist courts in defining the parameters of a joint employment relationship, and there is little case law interpreting the question of joint employment under the FMLA." *Dinkins v. Varsity Contractors, Inc.*, 2005 WL 599979, *6 (N.D.Ill. 2005) (Gettleman, J.). The FMLA's joint employment regulation, 29 C.F.R. §825.106, largely mirrors the wording of the FLSA's joint employment regulation, 29 C.F.R. §791.2(b), so courts in this district and elsewhere have looked to case law interpreting the FLSA in defining joint employment. *Dinkins*, at *6 (citing *Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir. 2004)). *See also Sherry v. Protection, Inc.*, 981 F.Supp. 1133, 1135 (N.D.Ill. 1997).

The Seventh Circuit has not adopted a test for determining whether a joint employment relationship exists under the FMLA or FLSA, and there is a split among the other circuits as to what factors to consider. Regardless of the test applied, the critical factor in the analysis in any case is the control that the separate entities exert over the same employees. *NLRB v. Western Temporary Services, Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987) (discussing the joint employment in the labor law context); *Vennet v. American Intercontinental University Online*, 2006 WL 908030, at *2 (N.D. Ill. 2006) (in joint employment situations, "the ultimate focus is on the amount of control each potential employer exercises over the employment situation") (Hart, J.).

As a threshold matter, the notion that a company and a union representing its employees could be joint employers is contrary to the adversarial system designed by the federal labor laws. An employer cannot dictate who the union selects as its representatives, or restrain their union-related activities. 29 U.S.C. §§ 158(a)(1) and (2).

13

Likewise, a union cannot interfere with the employer's selection of its representatives for collective bargaining or adjusting grievances. 29 U.S.C. § 158(b)(1). Furthermore, the 2004 IBEW CBA provides that:

> The Company *will* recognize Stewards selected in accordance with the Union rules and regulations as the Union representatives of the employees in the respective groups for which they are chosen. The Company also recognizes that the displacing of a Steward is the function of the Union.

(Peterson Decl. Ex. 1, Article 11.03 (emphasis added)). As IBEW stewards are adversaries of Company representatives in grievance proceedings and collective bargaining, they cannot be found to be acting in the interest of Illinois Bell, as in a typical joint employment relationship.

Moreover, Illinois Bell has no control over the selection of IBEW stewards or the work they perform for the union. Illinois Bell has only limited control over when and how much time stewards spend on union-related business. Under the 2004 IBEW CBA, union representatives *must* be given time off for union business "as work schedules permit" and with "reasonable advance notice." (Def.'s Facts ¶¶ 3, 5; Peterson Decl. Ex. 1, Article. 11.09). In effect, the IBEW has more control than Illinois Bell over what the stewards do and when they do it. Furthermore, Illinois Bell does not determine what and how stewards are paid by the IBEW for their union activities. (Def.'s Facts ¶ 14). In addition to having no role in selecting stewards, Illinois Bell has no control over removing them from their steward positions. (Peterson Decl. Ex. 1, Article 11.03). In short, when the stewards are engaged in union business, they perform no work directly for Illinois Bell (and are often acting as the Company's adversaries), and they are not under the control of Illinois Bell, except for time-reporting purposes. Under these circumstances, a joint employment relationship cannot be found to exist.

No court has ever found that a union and a company (with employees in that union) are joint employers under any federal statute. In the few cases where the issue has been addressed, the courts have held that no joint employment relationship exists. Calling the argument "extremely novel," Judge Coar rejected an attempt by the EEOC to impose liability for workplace discrimination on both a union and a company under a theory that the union jointly controlled the employees' working conditions. *EEOC v. Foster Wheeler Constructors, Inc.*, 1999 WL 507191, *8 (N.D.Ill.). In explaining his decision, Judge Coar noted that neither the EEOC nor the Court could find any case law applying the joint employer theory to a labor union. *Id.* In *Kiphart v. Saturn Corp.*, 74 F.Supp.2d 769 (M.D.Tenn. 1999), *rev'd on other grounds*, 215 F.3d 573 (6th Cir. 2001), the employee brought suit under the Americans With Disabilities Act against both his employer and his union. At the close of the employee's case, the court dismissed the union from the case, pursuant to Fed. R. Civ. P. 50, finding that the union was not a joint employer. *Id.* at 772.

In sum, there is no legal or factual basis for finding that Illinois Bell and the IBEW are joint employers of the Plaintiff Employees, such that time spent on union-related business should be stacked with time spent on Company-related business in calculating their FMLA eligibility.

## CONCLUSION

For the foregoing reasons, Illinois Bell requests that the Court grant Illinois Bell summary judgment on the Plaintiff Employees' claims that they are eligible for FMLA leave on the grounds that unpaid union time coded MXUU does not count as "hours of service" for purposes of determining the FMLA eligibility.

Respectfully submitted this 28th day of March, 2008.

ILLINOIS BELL TELEPHONE COMPANY

By: s/Laura A. Lindner
One of Its Attorneys

Laura A. Lindner
Jeremiah C. Van Hecke
LINDNER & MARSACK, S.C.
411 East Wisconsin Ave. – Suite 1800
Milwaukee, WI 53202
Phone:  414-273-3910
Fax:  414-298-9873
llindner@lindner-marsack.com
jvanhecke@lindner-marsack.com

Stephen B. Mead
AT&T Legal Department
225 West Randolph Street
Suite 25A
Chicago, IL 60606
(312)727-3506
stephen.mead@att.com

 **U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

November 15, 1993                                                                          FMLA-18

Dear **Name\***,

This is in response to your letter requesting clarification of certain provisions of the Family and Medical Leave Act of 1993 (FMLA ). You specifically question the provision in the regulations that requires the employee to work at least 1,250 hours during the 12-month period immediately preceding the date leave commences in order to be eligible for leave. You consider compensable hours (including time spent on some form of paid leave) to be the same as time actually worked.

In developing the FMLA, Congress specifically addressed the issue of the 1,250 hours work time in the legislative history to the statute. The Congress discussed this provision and relied upon the language contained in 29 CFR Part 785 as a basis for making this determination. 29 CFR Part 785 is a publication entitled "Hours Worked" and relates to The Fair Labor Standards Act (FLSA) (copy enclosed). This publication is also referenced in the FMLA regulations. The purpose of the definitions in Part 785 is to enable an employer to determine the number of hours worked by an employee (as opposed to non work time) for which the employer must meet the monetary requirements of FLSA. Part 785 does not include time spent on paid or unpaid leave as hours worked, consequently these hours are not counted in determining the 1,250 hour eligibility test for an employee under FMLA.

Hopefully this has been responsive to your inquiry. Should you need further assistance, please contact **Name\*** of my staff at telephone (202) 219-8412.

Sincerely,

Maria Echaveste
Administrator

**\*** *Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).*