IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MAPLES, at al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07C6725 |
| | ) | |
| ILLINOIS BELL TELEPHONE COMPANY, | ) | Judge Ruben Castillo |
| | ) | |
| Defendant. | | |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant ILLINOIS BELL TELEPHONE COMPANY (d/b/a AT&T Illinois), by its

attorneys and pursuant to L.R. 56.1, hereby submits the following undisputed facts in support of

its motion for partial motion:

1.    Illinois Bell Telephone Company ("Illinois Bell") provides telecommunications

and entertainment services to business and residential customers in Illinois.  It is a subsidiary of

AT&T Teleholdings, Inc., and does business as "AT&T Illinois."  (Peterson Decl. ¶ 3 (attached

as Exhibit A))

2.    Plaintiffs Maples, Stoner, Purkey, Rivera, Byrnes, and O'Connor (the "Plaintiff

Employees") hold non-management positions with Illinois Bell, and are members of the

International Brotherhood of Electrical Workers Local 21 ("IBEW").  The terms and conditions

of their employment are governed by a collective bargaining agreement ("CBA").  (King Decl. ¶

2 (attached as Exhibit B))

3.    The Plaintiff Employees are or were chief stewards, area stewards, or stewards

with the IBEW during all or some of the time period between November 2005 and November

2007. They were selected for those positions in accordance with the IBEW's rules and regulations. Illinois Bell has no role in selecting IBEW Stewards. (King Decl. ¶ 3).

4.      The CBA between the IBEW and Illinois Bell that is relevant to this action is effective from June 27, 2004 through June 27, 2009 ("2004 IBEW CBA"). (Peterson Decl. ¶ 4).

5.      The 2004 IBEW CBA provides in relevant part:

**Collective Bargaining**

**9.02** Unless mutually agreed otherwise, up to five (5) authorized representatives on the Union's bargaining team who are Company employees not on leave of absence for Union business, shall be paid by the Company for actual time spent in collective bargaining sessions with the Company's bargaining team, in an amount not to exceed eight (8) hours of his/her basic wage rate per day.

**Payment For Joint Meeting Time**

**11.06** For purposes of processing grievances, the Company agrees to permit authorized Union representatives to confer with representatives of the company without loss of pay during such employees' regularly scheduled working hours. In addition, such employees shall suffer no loss in pay for reasonable time spent during such regularly scheduled working hours in traveling for grievance meetings.

**11.07** When the Company agrees to meet with a Union representative for purposes other than the processing of grievances and further agrees to pay for the time of the Union representative involved, such time shall be paid in accordance with the terms of this Agreement.

**11.08** Employees who are excused in accordance with the provisions of this Section and Article 9 (Collective Bargaining Procedures), shall give his/her immediate supervisor reasonable notice of the intended absence and of the probable duration of the absence.

**Absence For Union Business**

**11.09** The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union the necessary time off without pay to transact business of the Union, provided that the Company is given reasonable advance notice of such absence.

**11.11** Excused absences for Union business include absences by Union officers or properly designated representatives of the Union to perform administrative

duties concerning their Locals. In addition, such duties are understood to include attendance at conventions and training classes associated with those administrative duties, and Telephone Coordination Council meetings, by those officials or by their designated representatives.

**11.12** Such excused absences do not include absences in connection with organizing activities with other employees, grievance and arbitration proceedings with other employers, or other activities related to the administration of collective bargaining agreements with other employers.

### Leave Of Absence For Union Business

**11.13** Excused absences granted to a Union representative shall not exceed thirty (30) consecutive calendar days or a total of three hundred sixty (360) cumulative scheduled hours in any calendar quarter. Absences in excess of this amount shall not be authorized except by a leave of absence to be applied for by the Union in writing.

(Peterson Decl. ¶ 5, Ex. 1).

6.    Illinois Bell has implemented an exception-based time reporting system for non-management employees. The system assumes that an employee works his or her regular job duties during his or her scheduled hours. If an employee does not perform his or her regular job duties at the time he or she is scheduled to work, the employee must report the exception time using the applicable exception code(s). (King Decl. ¶ 5).

7.    The exception time reported by an employee feeds into the payroll system used by Illinois Bell, which is called "eLink." (King Decl. ¶ 6).

8.    The eLink payroll system maintains the exception time data reported by Illinois Bell employees. (King Decl. ¶ 7).

9.    When an IBEW steward spends time on a matter that qualifies as paid time under Articles 11.06 or 11.07 of the 2004 IBEW CBA, the steward is to code the time using the "MXUP" code for "Miscellaneous Absence – Union – Paid." (King Decl. ¶ 8).

10.     When an IBEW steward reports MXUP time, the steward is also required to report one of the following absence reason codes:

| | |
|---|---|
| M00037 | Other |
| M00061 | Full Committee |
| M00062 | Committee/Joint Meetings |
| M00066 | Grievance Meeting |
| M00067 | Disciplinary/Investigatory Meeting |
| M00068 | Other Union Management Meeting |
| M000WB | Temp. Work Restrict. – 11 day/more |

(King Decl. ¶ 9).

11.     When an IBEW steward spends time on a matter that qualifies as an unpaid absence for union business under Articles 11.09, 11.10, or 11.11 of the 2004 IBEW CBA, the steward is to code the time using the "MXUU" code for "Miscellaneous Absence – Union – Unpaid." (King Decl. ¶ 10).

12.     IBEW stewards are not required to report to Illinois Bell time spent on union business (i.e., MXUU-coded time) under Articles 11.09, 11.10, or 11.11 of the 2004 IBEW CBA that is outside their regularly scheduled work hours. (King Decl. ¶ 11).

13.     IBEW are not required to report to Illinois Bell the nature or details of the union business they perform during time they code as MXUU under Articles 11.09, 11.10, and 11.11 of the 2004 IBEW CBA. (King Decl. ¶ 12).

14.     The IBEW pays stewards for time they code as MXUU. (King Decl. ¶ 13).

15.     Article 10.08 of the CWA's CBA in effect from April 4, 2004 through April 4, 2009 is titled "Absence for Union Business," and provides: "The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union reasonable time off of up to one thousand and eighty (1,080) hours during a calendar year, unless mutually agreed otherwise, without pay, to transact business of the

Union, provided that the Company is given reasonable advance notice of such absence." (Peterson Decl. ¶ 7, Ex. 2).

16.     During 2001 collective bargaining negotiations, the Communications Workers of America ("CWA"), which represents some Illinois Bell employees, negotiated and reached an agreement with Illinois Bell that unpaid absences for union business covered under Article 10.08 of the CWA's collective bargaining agreement (i.e., time coded MXUU), would be counted by Illinois Bell as "hours worked" for purposes of calculating the FMLA eligibility of Illinois Bell employees who are members of the CWA, retroactive to January 1, 2000. This same agreement was reached between Illinois Bell and the CWA during the 2004 collective bargaining negotiations. (Peterson Decl. ¶ 8).

17.     While it negotiated and reached an agreement with the CWA to do so, Illinois Bell has never had an agreement with the IBEW to count time coded MXUU by Illinois Bell employees who are members of the IBEW as "hours worked" for purposes of calculating the FMLA eligibility of those employees. (Peterson Decl. ¶ 9).

18.     Following the ratification of the 2004 IBEW CBA, the IBEW requested that Illinois Bell include MXUU-coded time toward the FMLA eligibility requirement for Illinois Bell employees who are members of the IBEW, as it does for Illinois Bell employees who are members of the CWA. Illinois Bell was willing to bargain with the IBEW over the issue as it did with the CWA, but no substantive bargaining occurred and no agreement was reached. (Peterson Decl. 10).

19.     Illinois Bell uses a mechanized system for determining whether an employee has met the FMLA's 1,250-hour eligibility requirement. When an Illinois Bell employee requests FMLA leave, the mechanized system automatically calculates whether the employee has

sufficient hours of service to satisfy the 1,250-hour requirement. (Atilano Decl. ¶¶ 3-4 (attached as Exhibit C)).

20.    The mechanized system pulls data from the eLink payroll system, and is programmed to include and exclude time associated with various time-reporting codes in calculating FMLA eligibility. (Atilano Decl. ¶ 5).

21.    Since November 2005, the mechanized system has included time coded as MXUP (i.e., paid union time) toward the 1,250-hour FMLA eligibility requirement for Illinois Bell employees who are members of the IBEW. (Atilano Decl. ¶ 6).

22.    Since November 2005, the mechanized system has excluded MXUU-coded time in calculating the FMLA eligibility of Illinois Bell employees who are members of the IBEW, but has included MXUU-coded time in calculating the FMLA eligibility of Illinois Bell employees who are members of the CWA, per Illinois Bell's agreement with the CWA. (Atilano Decl. ¶ 7; Peterson Decl. ¶ 8).

23.    Since November 2005, the mechanized system has excluded vacation and personal days, sick days, holidays, FMLA leave, and leave during which an employee receives workers' compensation or disability benefits in determining whether an Illinois Bell employee meets the 1,250-hour FMLA eligibility requirement. (Atilano Decl. ¶ 8).

Respectfully submitted this 28th day of March, 2008.

ILLINOIS BELL TELEPHONE COMPANY

By:  s/Laura A. Lindner
        One of Its Attorneys

Laura A. Lindner
Jeremiah C. Van Hecke
LINDNER & MARSACK, S.C.
411 East Wisconsin Ave., #1800
Milwaukee, WI 53202
Phone:  414-273-3910
Fax:  414-298-9873
llindner@lindner-marsack.com
jvanhecke@lindner-marsack.com

Stephen B. Mead
AT&T Legal Department
225 West Randolph Street
Suite 25A
Chicago, IL 60606
(312)727-3506
stephen.mead@att.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH MAPLES, at al.,                    )
                                           )
        Plaintiffs,                        )
                                           )
v.                                         )        Case No. 07C6725
                                           )
ILLINOIS BELL TELEPHONE COMPANY,           )        Judge Ruben Castillo
                                           )
        Defendant.                         )

## <u>DECLARATION OF PATTI PETERSON</u>

Patti Peterson, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I am employed by AT&T Services, Inc. as Director – Labor Relations.  I have held this position since November 1, 2000.

2.      In my position, I am involved in negotiating collective bargaining agreements with the unions that represent employees of Illinois Bell Telephone Company ("Illinois Bell"); specifically, the International Brotherhood of Electrical Workers Local 21 ("IBEW") and the Communications Workers of America, District 4 ("CWA").

3.      Illinois Bell provides telecommunications and entertainment services to business and residential customers in Illinois.  It is a subsidiary of AT&T Teleholdings, Inc., and does business as "AT&T Illinois."



EXHIBIT
A

4.     In 2004, I was involved in negotiating a collective bargaining agreement between the IBEW and Illinois Bell.  The agreement that was negotiated and ratified is effective from June 27, 2004 through June 27, 2009 ("2004 IBEW CBA").

5.     The 2004 IBEW CBA provides in relevant part:

**Collective Bargaining**

**9.02**   Unless mutually agreed otherwise, up to five (5) authorized representatives on the Union's bargaining team who are Company employees not on leave of absence for Union business, shall be paid by the Company for actual time spent in collective bargaining sessions with the Company's bargaining team, in an amount not to exceed eight (8) hours of his/her basic wage rate per day.

**Payment For Joint Meeting Time**

**11.06**   For purposes of processing grievances, the Company agrees to permit authorized Union representatives to confer with representatives of the company without loss of pay during such employees' regularly scheduled working hours.  In addition, such employees shall suffer no loss in pay for reasonable time spent during such regularly scheduled working hours in traveling for grievance meetings.

**11.07**   When the Company agrees to meet with a Union representative for purposes other than the processing of grievances and further agrees to pay for the time of the Union representative involved, such time shall be paid in accordance with the terms of this Agreement.

**11.08**   Employees who are excused in accordance with the provisions of this Section and Article 9 (Collective Bargaining Procedures), shall give his/her immediate supervisor reasonable notice of the intended absence and of the probable duration of the absence.

**Absence For Union Business**

**11.09**   The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union the necessary time off without pay to transact business of the Union, provided that the Company is given reasonable advance notice of such absence.

**11.11**   Excused absences for Union business include absences by Union officers or properly designated representatives of the Union to perform

2

administrative duties concerning their Locals.  In addition, such duties are understood to include attendance at conventions and training classes associated with those administrative duties, and Telephone Coordination Council meetings, by those officials or by their designated representatives.

**11.12**  Such excused absences do not include absences in connection with organizing activities with other employees, grievance and arbitration proceedings with other employers, or other activities related to the administration of collective bargaining agreements with other employers.

**Leave Of Absence For Union Business**

**11.13**  Excused absences granted to a Union representative shall not exceed thirty (30) consecutive calendar days or a total of three hundred sixty (360) cumulative scheduled hours in any calendar quarter.  Absences in excess of this amount shall not be authorized except by a leave of absence to be applied for by the Union in writing.

A true and correct copy of the referenced Articles in the IBEW's 2004 CBA is attached as Exhibit 1.

6.      In 2004, I was also involved in negotiating a collective bargaining agreement between the CWA and Illinois Bell.  The agreement that was negotiated and ratified is effective from April 4, 2004 to April 4, 2009 ("2004 CWA CBA").

7.      Article 10.08 of the 2004 CWA CBA is titled "Absence for Union Business," and provides:  "The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union reasonable time off of up to one thousand and eighty (1,080) hours during a calendar year, unless mutually agreed otherwise, without pay, to transact business of the Union, provided that the Company is given reasonable advance notice of such absence." A true and correct copy of Article 10.08 of the CWA's 2004 CBA is attached as Exhibit 2.

3

8.    During 2001 collective bargaining negotiations, the CWA negotiated and reached an agreement with Illinois Bell that unpaid absences for union business covered under Article 10.08 of the 2004 CWA CBA (i.e., time coded MXUU), would be counted by Illinois Bell as "hours worked" for purposes of calculating the FMLA eligibility of Illinois Bell employees who are members of the CWA, retroactive to January 1, 2000. This same agreement was reached between Illinois Bell and the CWA during the 2004 collective bargaining negotiations.

9.    Illinois Bell has never had an agreement with the IBEW to count time coded MXUU by Illinois Bell employees who are members of the IBEW as "hours worked" for purposes of calculating the FMLA eligibility of those employees.

10.    In late 2005 and early 2006, I had communications with Linda Cox, an officer with the IBEW, in which we discussed the IBEW's request that Illinois Bell include MXUU-coded time toward the FMLA eligibility requirement for Illinois Bell employees who are members of the IBEW, as it does for Illinois Bell employees who are members of the CWA. I conveyed to Cox that Illinois Bell was willing to bargain with the IBEW over the issue as it did with the CWA, but no substantive bargaining occurred and no agreement was reached.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Patti Peterson<br>
Patti Peterson

Executed on March 27, 2008.

4



AGREEMENT BETWEEN

**SBC**

**SBC MIDWEST**

AND

**INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS
LOCAL UNION 21**

Effective June 27, 2004 through June 27, 2009

GCIU 278

PETERSON
DECL. EX. 1

(E) Receipt in the payroll office of written notice from the Union that an employee is no longer eligible to participate.

(F) Leave of absence of a participating employee.

8.08 Except as otherwise provided herein, deductions shall continue for employees while receiving disability benefits, or while temporarily promoted to management. No deductions will be made for employees receiving payments under the Supplemental Income Protection Plan (SIPP), or the Long-Term Disability (LTD) Plan.

8.09 Deductions shall not be made if the employee has insufficient earnings to contribute to COPE.

8.10 As provided for in the regulations of the Federal Elections Commission, the Union will reimburse the Company for the costs of development, implementation, and administration of the payroll deduction system for COPE.

8.11 This Article is subject to applicable laws and regulations and shall not be placed in effect where prohibited by any such law or regulation.

8.12 The Parties agree that the Company assumes no responsibility other than the collection of contributions pursuant to employee authorization of payroll deductions and forwarding of such amounts collected to COPE. The Union agrees to indemnify the Company and hold it harmless from all claims, damages, costs, and expenses of any kind which may arise in connection with the program covered.

8.13 Any change in the aforementioned program shall be bargained for by both the Company and the Union.

# ARTICLE 9

# COLLECTIVE BARGAINING PROCEDURES

## Collective Bargaining

9.01 All collective bargaining shall be conducted between authorized representatives of the Union as designated by its Business Manager or by a person empowered to act in the Business Manager's behalf and authorized representatives of the Company as designated by the appropriate Executive Director-Labor Relations.

9.02 Unless mutually agreed otherwise, up to five (5) authorized representatives on the Union's bargaining team who are Company employees not on leave of absence for Union business, shall be paid by the Company for actual time spent in collective bargaining sessions with the Company's bargaining team, in an amount not to exceed eight (8) hours of his/her basic wage rate per day.

9.03 It is the intention of the Company and the Union, with respect to future collective bargaining of replacement agreements, to conduct negotiations in such a manner as to reach a new agreement on or before the termination date of the present Agreement.

9.04 Any agreements reached as a result of collective bargaining by representatives of the Parties to this Agreement shall become binding and effective only upon signature of the authorized representatives of the Parties as designated respectively by the Business Manager of the Union and by the appropriate Executive Director-Labor Relations of the Company or by persons empowered to act in their behalf.

9.05 At least one (1) representative each of the Union and Company who is authorized to execute final and binding agreements shall be in attendance at each collective bargaining meeting unless this requirement is specifically waived on each occasion by authorized representatives of both Parties.

9.06 The Business Manager and the appropriate Executive Director-Labor Relations of the Company, or persons empowered to act on their behalf in this regard, shall keep each other currently advised in writing of the names of representatives authorized to represent them in collective bargaining negotiations and in the execution of final and binding agreements and shall notify each other immediately of any changes of authorized representatives.

9.07 Employees who are granted excused absences for collective bargaining shall receive eight (8) hours of his/her basic wage rate per day spent in collective bargaining with the Company.

9.08 The costs of joint Union-Company conference facilities utilized for collective bargaining shall be shared equally by the Company and the Union.

**Contract Distribution**

9.09　The Company agrees to have this Agreement printed by a union printer and to provide copies requested by the Union at the time of printing. The Company shall pay for the first twelve thousand (12,000) copies requested by the Union at the time of printing. The costs of all additional copies requested by the Union shall be paid for by the Union. The Company shall pay for Company requested copies unless the Company and the Union mutually agree to an exception.

## ARTICLE 10

## BULLETIN BOARDS

10.01　Subject to the provisions of paragraph 10.02 below, the Company agrees to furnish space, without charge, to erect bulletin boards for the exclusive use of the Union. If practicable, and space permits, the area provided should accommodate boards of approximately 48 x 60 inches. Location of the boards shall be mutually decided upon by the appropriate Union Area Steward, Chief Steward, or Business Representative and the appropriate supervisory levels at places where employees covered by this Agreement work or assemble.

10.02　The Union agrees to post notices about the following matters only: elections, meetings, reports, other official Union business and notices of Union social and recreational activities. The Union agrees not to post or permit to be posted controversial material or material of a derogatory nature regarding the Company or its personnel.

10.03　The Union assumes responsibility for complete compliance with the spirit and intent of the provisions of this Article. If the Company believes that the posted material is not in the spirit and intent of the provisions of this Article, such material shall be brought to the attention of the Business Representative and removed on request. If the Union fails to remove the material it may be removed by the Company.

10.04　The Company shall have the option of providing bulletin boards for the Union's use, without charge.

## ARTICLE 11

## UNION OFFICERS AND REPRESENTATIVES

**Promotions & Transfers Of Union Representatives**

11.01　The Company agrees that it will not promote or transfer any Local Union officer, Chief Steward/Area Steward, Business Representative/ Assistant Business Manager, or Steward, or other equivalent titles of the Union (even though the previously mentioned Union representative is agreeable thereto) which affects the employee's existing status as a duly certified local Union representative of the Union, without first obtaining the consent of the Union. The Company shall give the Union written notice of the proposed promotion or transfer and the Union shall conclusively be presumed to have consented unless, within one (1) week after receipt of such written notification, it advises the Company in writing that it does not consent. The Union shall keep the Company advised in writing of the names of all representatives coming within the scope of this Section at the proper Union-Management level.

11.02　The above also applies to temporary changes to Report Location of the above mentioned Union representatives which are for a period in excess of thirty (30) days.

**Stewards & Orientation**

11.03　The Company will recognize Stewards selected in accordance with the Union rules and regulations as the Union representatives of the employees in the respective groups for which they are chosen. The Company also recognizes that the displacing of a Steward is the function of the Union. The Union will notify the Company of the identity of Stewards and, within five (5) working days, of any change in Stewards' status. When practical, Stewards shall not leave their work without notifying their supervisors.

11.04　Each newly hired employee will be introduced by a supervisor to the appropriate Local Union representative and the Local Union representative will have up to thirty (30) minutes to confer with the employee. Time spent in such meetings during the employee's regularly scheduled hours shall be paid.

11.05　Each transferee will be introduced by their supervisor to the appropriate Local Union representative, however, no additional meeting time will be allowed.

## Payment For Joint Meeting Time

11.06 For purposes of processing grievances, the Company agrees to permit authorized Union representatives to confer with representatives of the Company without loss of pay during such employees' regularly scheduled working hours. In addition, such employees shall suffer no loss in pay for reasonable time spent during such regularly scheduled working hours in traveling for grievance meetings.

11.07 When the Company agrees to meet with a Union representative for purposes other than the processing of grievances and further agrees to pay for the time of the Union representative involved, such time shall be paid in accordance with the terms of this Agreement.

11.08 Employees who are excused in accordance with the provisions of this Section and Article 9 (Collective Bargaining Procedures), shall give his/her immediate supervisor reasonable notice of the intended absence and of the probable duration of the absence.

## Absence For Union Business

11.09 The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union the necessary time off without pay to transact business of the Union, provided that the Company is given reasonable advance notice of such absence.

11.10 It is understood that all absences mentioned in this Section pertain to the administration of this Collective Bargaining Agreement unless mutually agreed upon between the Local Union Business Manager and the appropriate Director - Labor Relations.

11.11 Excused absences for Union business include absences by Union officers or properly designated representatives of the Union to perform administrative duties concerning their Locals. In addition, such duties are understood to include attendance at conventions and training classes associated with those administrative duties, and Telephone Coordination Council meetings, by those officials or by their designated representatives.

11.12 Such excused absences do not include absences in connection with organizing activities with other employees, grievance and arbitration proceedings with other employers, or other activities related to the administration of collective bargaining agreements with other employers.

## Leave Of Absence For Union Business

11.13 Excused absences granted to a Union representative shall not exceed thirty (30) consecutive calendar days or a total of three hundred sixty (360) cumulative scheduled hours in any calendar quarter. Absences in excess of this amount shall not be authorized except by a leave of absence to be applied for by the Union in writing.

11.14 Requests for leaves of absence for Union business shall be made as far in advance as possible. Such requests shall be submitted to the appropriate Director - Labor Relations to arrange for approval and such requests shall be granted provided that all eligibility requirements are met. The initial period of such a leave of absence shall not exceed one (1) year, however, at the request of the Union and following similar procedures, it may be renewed on an annual basis. The total combined period of all such leaves of absence will not exceed eighteen (18) years.

11.15 The conditions of such leaves of absence for Union business are outlined in a current Memorandum of Agreement between the Parties.

11.16 A Union representative upon return from an excused absence or leave of absence, shall be reinstated to the same job title or a job title of absence, in which the employee was engaged immediately preceding the absence subject to the provisions of this Agreement relating to layoffs. The employee shall be placed on the payroll at the rate then in effect for his/her assignment and for the period of service which was credited for wage purposes at the start of the leave of absence. No physical or other examination shall be required for reinstatement. However, the Company reserves the right to have such person examined to determine fitness for work or job placement if required by the law or if the Company would also subject any other employee returning from an excused absence or leave of absence to the same examination.



AGREEMENT BETWEEN

SBC MIDWEST
AND

COMMUNICATIONS
WORKERS OF
AMERICA

DISTRICT 4

Effective April 4, 2004 through April 4, 2009

PETERSON
DECL. EX. 2

The posted jobs are on Company Conference facilities utilized for collective barga... shall be borne by the Company provided the Company selects the location and the ... of such facilities. If by mutual agreement an off Company site is selected, the cos... such site shall be shared equally by the Company and the Union.

**Contract Distribution**

8.04    The Company agrees to have this Agreement printed by a union printer within a reas... able time frame and to distribute a copy to each employee covered by this Agreem... A reasonable number of additional copies of the Agreement will be provided to the U... upon request until the Company's initial supply of copies is exhausted.

## ARTICLE 9

## BULLETIN BOARDS

9.01    The Company agrees to provide and install bulletin boards for the exclusive use of ... Union in mutually agreeable locations, at places where employees covered by this Agr... ment work or assemble, and subject to the provisions of paragraph 9.02 below. T... Company will, at its discretion, replace worn bulletin boards.

9.02    The Union agrees to post notices about the following matters only: elections, meetin... reports, other official Union business and notices of Union social and recreational act... ties. The Union agrees not to permit the posting of material of a derogatory natu... regarding the Company and its personnel.

9.03    The Union assumes responsibility for complete compliance with the spirit and intent ... the provisions of this Article. If the Company believes that the posted materials are no... the spirit and intent of the provisions of this Article, such material shall be brought to t... attention of the President of the Local Union. Material removed in accordance with t... above stated provisions may be posted again only after a mutual agreement has be... reached between President of the Local Union and the Executive Director - Labor Re... tions of the Company or a representative empowered by the Executive Director to act ... their behalf in this matter.

## ARTICLE 10

## UNION OFFICERS AND REPRESENTATIVES

**Promotions & Involuntary Transfers Of Union Representatives**

10.01   When the Company desires either to promote to a management position or to involu... tarily transfer an employee who is a duly certified President, Vice-President, Secreta... Treasurer, or Secretary-Treasurer of a Local of the Union, or Area Representative ... equivalent and the proposed change would have an effect on the employee's status a... an officer of the Local, the Company agrees to give the designated Representative ... the Union written notice of such impending promotion or involuntary transfer at lea... fourteen (14) calendar days, if possible, in advance of the effective date of the change...

10.02   The Company will notify the Union, as soon as practicable, when any such employee ... temporarily assigned outside the Bargaining Unit for one (1) week or longer.

30

10.03 Each newly hired employee and each employee new to the Bargaining Unit will be intro-
duced by a Supervisor to the appropriate Union Steward and the Union Steward will
have up to thirty (30) minutes to confer with the employee. Such shall occur within a
reasonable time frame of the employee's hire or entry into the Bargaining Unit.

10.04 Each transferee will be introduced by their Supervisor to the appropriate Union Steward,
however, no additional meeting time will be allowed. Such shall occur within a reason-
able time frame of the employee's transfer into the work group.

## Payment For Joint Meeting Time

10.05 For purposes of processing grievances, the Company agrees for authorized Union rep-
resentatives to confer with representatives of the Company without loss of pay during
such employee's regularly scheduled working hours. In addition, such employees shall
suffer no loss in pay for time spent during such regularly scheduled working hours in
traveling for grievance meetings. All time so paid will be at the basic hourly wage rate
plus applicable differentials or premium rate, however, such will not be paid at an over-
time rate.

10.06 When the Company meets with a Union representative(s) during such employee's regu-
larly scheduled working hours for purposes other than the processing of grievances and
further agrees to pay for the time involved, all time so paid will be at the basic hourly
wage rate plus applicable differentials or premium rate, however, such will not be paid at
an overtime rate.

10.07 Employees who are excused in accordance with the provisions of this Section and Ar-
ticle 8 (Collective Bargaining Procedures), shall give their immediate Supervisor rea-
sonable advance notice of the intended absence and of the probable duration of the
absence.

## Absence For Union Business

10.08 The Company, insofar as work schedules permit, agrees to grant to any employee who
is an Officer or properly designated representative of the Union reasonable time off of
up to one thousand and eighty (1,080) hours during a calendar year, unless mutually
agreed otherwise, without pay, to transact business of the Union, provided that the Com-
pany is given reasonable advance notice of such absence.

## Cross Entity Representation

10.09 In situations where Union representatives from an Ameritech entity covered by this Col-
lective Bargaining Agreement represent employees of another Ameritech entity with
which the Union has a contractual relationship, the Union representatives may be on
either Union Business (Unpaid) or Joint Meeting (Paid) time as is appropriate under the
circumstances.

## Leave Of Absence For Union Business

10.10 Subject to service requirements, an authorized Union representative who requires time
off of more than one thousand and eighty (1,080) working hours during a calendar year
for Union business, may be granted a leave of absence of not more than one (1) year
upon request of the Union provided, however, that the maximum number of employees
who may be granted a leave of absence shall not exceed forty (40) in a calendar year,
unless otherwise mutually agreed to. Requests for a leave of absence for Union busi-
ness shall be made as far in advance as possible. Such requests shall be submitted to
the appropriate Executive Director - Labor Relations to arrange for approval and, such

31

requests shall be granted provided all eligibility requirements are met. At the request of the Union and following similar procedures, such a leave of absence may be renewed on an annual basis. The total combined period of all such leaves of absence will not exceed twenty-four (24) years.

10.11  A Union representative on leave of absence for Union Business shall continue to accrue net credited service for use in computing net credited service for all benefit purposes.

10.12  A Union representative on leave of absence for Union Business shall retain eligibility for the following benefits, as determined by their net credited service, to be paid for by the Company:

(A)  Death Benefit - Coverage based on the current basic wage rate for the job title held.

(B)  Basic Group Life Insurance - The premium for Basic Group Life Insurance coverage equivalent to one year's wages based on the current basic wage rate for the job title held.

(C)  Telephone Concession Service - If provided to active employees covered by this Agreement and on the same terms and availability as provided to such active employees.

Such Union representative may also purchase at their own expense, the following benefits, as determined by their net credited service:

(D)  Coverage under the Comprehensive Health Care Plan, Dental Expense Plan and Vision Care Plan or any available Company coverage options (like HMOs, etc.).

(E)  Supplemental Group Life Insurance - Supplemental Group Life Insurance in appropriate multiples of annualized basic pay in accordance with the terms of plan enrollment.

(F)  Dependent Group Life Insurance.

10.13  A Union representative upon return from an excused absence or leave of absence shall be reinstated to the same job title or a job title of equal pay to that in which the employee was engaged immediately preceding the absence subject to the provisions of this Agreement relating to layoffs. The employee shall be placed on the payroll at the rate then in effect for his or her assignment and for the period of service which was credited for wage purposes at the start of the leave of absence. No physical or other examination shall be required for reinstatement. However, the Company reserves the right to have such person examined to determine fitness for work or job placement if required by the law or if the Company would also subject any other employee returning from an excused absence or leave of absence to the same examination. The employee shall be eligible to sickness disability benefits beginning the eighth (8th) calendar day following the expiration of the leave of absence. The period of such leave of absence and the accrued net credit service will be counted in determining all other rights and benefits associated with net credited service, such as, but not limited to eligibility for vacations, excused work days, disability benefits, death benefits and pensions.

# ARTICLE 11

## INFORMATION – SHARING

11.01  The Union and the Company realize the need for joint discussion and cooperation to resolve issues related to changes in the business of the Company. The Parties agree that there should be early communication and information-sharing discussions regarding Market Business Unit or Network organization strategies and developments of mu-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH MAPLES, at al.,                     )
                                            )
        Plaintiffs,                         )
                                            )
v.                                          )        Case No. 07C6725
                                            )
ILLINOIS BELL TELEPHONE COMPANY,            )        Judge Ruben Castillo
                                            )
        Defendant.                          )

## <u>DECLARATION OF JANNINE KING</u>

Jannine King, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I am employed by AT&T Services, Inc. as Lead Labor Relations Manager. I have held this position since March 1, 2003.

2.      In my position, I have access to personnel records of employees of Illinois Bell Telephone Company ("Illinois Bell" or the "Company"). Those records reflect that Plaintiffs Maples, Stoner, Purkey, Rivera, Byrnes, and O'Connor (the "Plaintiff Employees") hold non-management positions with Illinois Bell, and are members of the International Brotherhood of Electrical Workers, Local 21 ("IBEW"). The terms and conditions of their employment are governed by a collective bargaining agreement ("CBA").

3.      The Company has received information from the IBEW, to which I have access, which reflects that the Plaintiff Employees were chief stewards, area stewards, or


EXHIBIT
B

stewards with the IBEW during all or some of the time period between November 2005 through November 2007, and that they were selected for those steward positions in accordance with the IBEW's rules and regulations. Illinois Bell has no role in selecting IBEW stewards.

4.    I have subject matter expertise on the time reporting system used by non-management Illinois Bell employees, and am often consulted by representatives of Illinois Bell and the unions representing Illinois Bell employees for information regarding the time reporting system.

5.    Illinois Bell has implemented an exception-based time reporting system for non-management employees. The system assumes that an employee works his or her regular job duties during his or her scheduled hours. If an employee does not perform his or her regular job duties at the time he or she is scheduled to work, the employee must report the exception time using the applicable exception code(s).

6.    The exception time reported by an employee feeds into the payroll system used by Illinois Bell, which is called "eLink."

7.    The eLink payroll system maintains the exception time data reported by Illinois Bell employees.

8.    When an IBEW steward spends time on union-related business that qualifies as paid time under Articles 11.06 or 11.07 of the 2004 IBEW CBA, the steward is to code the time using the "MXUP" code for "Miscellaneous Absence – Union – Paid."

9.    When an IBEW steward reports MXUP time, the steward is also required to report one of the following absence reason codes:

             M00037      Other
             M00061      Full Committee

| M00062 | Committee/Joint Meetings |
| M00066 | Grievance Meeting |
| M00067 | Disciplinary/Investigatory Meeting |
| M00068 | Other Union Management Meeting |
| M000WB | Temp. Work Restrict. – 11 day/more |

10. When an IBEW steward spends time on a matter that qualifies as an unpaid absence for union business under Articles 11.09, 11.10, or 11.11 of the 2004 IBEW CBA, the steward is to code the time using the "MXUU" code for "Miscellaneous Absence – Union – Unpaid."

11. IBEW stewards are not required to report to Illinois Bell time spent on unpaid union business (i.e., MXUU-coded time) under Articles 11.09, 11.10, or 11.11 of the 2004 IBEW CBA that is outside their regularly scheduled work hours.

12. IBEW stewards are not required to report to Illinois Bell the nature or details of the unpaid union business they perform during time they code as MXUU under Articles 11.09, 11.10, and 11.11 of the 2004 IBEW CBA.

13. The IBEW pays stewards for time they code as MXUU.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Jannine King
Jannine King

Executed on March 27, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH MAPLES, at al.,                   )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )       Case No. 07C6725
                                          )
ILLINOIS BELL TELEPHONE COMPANY,          )       Judge Ruben Castillo
                                          )
        Defendant.                        )

### DECLARATION OF JOSEPH G. ATILANO

Joseph G. Atilano, having been duly sworn, on oath deposes and states that if he were called to testify in the above-captioned matter, he would be competent to testify to the following facts based upon his personal knowledge, and that these facts are true and correct:

1.    I am employed by AT&T Services, Inc. as Associate Director – HR Operations. I have held this position since July 2001.

2.    In my position, I oversee various operations of AT&T's FMLA Processing Unit in San Antonio, Texas. The Unit is responsible for processing requests for FMLA leave from Illinois Bell Telephone Company ("Illinios Bell") employees who are members of the International Brotherhood of Electrical Workers, Local 21 ("IBEW") and the Communications Workers of America ("CWA"), among other employees.

3.    Illinois Bell uses a mechanized system for determining whether an employee has met the FMLA's 1,250-hour eligibility requirement. I was involved in the development of the mechanized system.



4.    When an Illinois Bell employee requests FMLA leave, the mechanized system automatically calculates whether the employee has sufficient hours of service to satisfy the 1,250-hour requirement.

5.    The mechanized system pulls data from the eLink payroll system, and is programmed to include and exclude time associated with various time-reporting codes in calculating FMLA eligibility.

6.    Since November 2005, the mechanized system has included time coded as MXUP (i.e., paid union time) toward the 1,250-hour FMLA eligibility requirement for Illinois Bell employees who are members of the IBEW.

7.    Since November 2005, the mechanized system has excluded MXUU-coded time in calculating the FMLA eligibility of Illinois Bell employees who are members of the IBEW, but has included MXUU-coded time in calculating the FMLA eligibility of Illinois Bell employees who are members of the CWA.

8.    Since November 2005, the mechanized system has excluded vacation and personal days, sick days, holidays, FMLA leave, and leave during which an employee receives workers' compensation or disability benefits in determining whether an Illinois Bell employee meets the 1,250-hour FMLA eligibility requirement.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Joseph G. Atilano
Joseph G. Atilano

Executed on March 25, 2008.