**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH MAPLES, DONNA STONER, GRACE RIVERA, LOUELLA BYRNES, MICHAEL O'CONNOR, and LOCAL UNION No. 21 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO | ) ) ) ) ) ) ) | No. 07 C 6725 |
| Plaintiffs, | ) ) | Judge Castillo Magistrate Judge Nolan |
| v. | ) ) | |
| ILLINOIS BELL TELEPHONE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF LYNN ARWOOD

Lynn Arwood, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I have worked for Illinois Bell (the "Company") since 1979 as a Telephone Operator, Service Representative and a Customer Systems Technician.

2.      Since 1998, I have worked for Local Union No. 21 of the International Brotherhood of Electrical Workers, AFL-CIO ("Union") in addition to my duties for the Company.   Beginning in 1998, I served as the Unit Recorder for Unit 4 of the Union.   Unit 4 covers the area between I-294 and the Iowa border and I-88 and the area just north of Peoria. Since 2001, I have served as Chief Steward for the Union in the capacity of Benefits Advisor.

3.      I have personal knowledge of the benefits available to the stewards from the



Company and from the Union.

4.      Time reported to the Company as MXUP and MXUU by the Stewards counts toward eligibility for the fringe benefits provided by the Company that are set forth in Article 17 and the team performance awards described in Appendix A-9.   If the Company did not count MXUU hours for fringe benefit eligibility, some of the fringe benefits would be diminished. Diminished benefits would include the following: (1) pension credited service would be reduced, thereby reducing the amount of pension at retirement; (2) medical, dental and vision coverage could require a monthly premium depending on whether the aggregate of MXUP hours and regular work hours were above a certain weekly threshold; and (3) Team Performance Award amounts would be prorated to reflect the reduced hours.   Because the Company credits employees for MXUU hours for benefit eligibility, none of the benefits are diminished for the stewards.

5.      The Union provides a supplemental life insurance benefit for some employees of the Union in an amount equal to one times their annual Union salary.   The Union provides no other fringe benefits for which the Plaintiffs (or any other stewards) are eligible.

I declare under penalty of perjury that the foregoing is true and correct.

s/Lynn Arwood_____
Lynn Arwood

Executed on June 30, 2008.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MAPLES, DONNA STONER, LAVONNE PURKEY, GRACE RIVIERA, LOUELLA BYRNES, MICHAEL O'CONNOR, and LOCAL UNION No. 21 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO | ) ) ) ) ) ) ) | No. 07 C 6725 |
| Plaintiffs, | ) ) | Judge Castillo Magistrate Judge Nolan |
| v. | ) ) | |
| ILLINOIS BELL TELEPHONE COMPANY, | ) ) ) | |
| Defendant. | ) | |

### STIPULATION

Plaintiffs and defendant stipulate that, for purposes of this litigation only, the following is not in dispute:

Since June 27, 2004, for defendant's employees who are IBEW Local 21 members, the hours recorded under the time reporting code MXUU (Miscellaneous Absence - Union - Unpaid) have been credited for eligibility purposes for the fringe benefits identified in Article 17, the vacation benefits identified in Article 27, and the Team Performance Award identified in Appendix A9 to the parties' current collective bargaining agreement.

For Plaintiffs,
Robert E. Bloch
Dowd, Bloch & Bennett
8 S. Michigan Avenue, 19th Floor
Chicago, IL 60603

For Defendant,
Laura A. Lindner
Lindner & Marsack, S.C.
411 E. Wisconsin Ave. - Suite 1800
Milwaukee, WI 53202



EXHIBIT
D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBORAH MAPLES, DONNA STONER,** | ) | |
| **GRACE RIVERA,** | ) | |
| **LOUELLA BYRNES, MICHAEL O'CONNOR,** | ) | |
| **and LOCAL UNION No. 21 OF THE** | ) | **No. 07 C 6725** |
| **INTERNATIONAL BROTHERHOOD OF** | ) | |
| **ELECTRICAL WORKERS, AFL-CIO** | ) | |
| | ) | **Judge Castillo** |
| **Plaintiffs,** | ) | **Magistrate Judge Nolan** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ILLINOIS BELL TELEPHONE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DECLARATION OF DEBORAH MAPLES

Deborah Maples, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I have worked for Illinois Bell (the "Company") since August 17, 1984.  I have been employed as a Customer Service Representative in the Consumer business unit of the Company since August 17, 1984.

2.      I currently reside within this District.

3.      Since June 28, 2000, I have worked for the Union in addition to my duties for the Company.  Beginning in 1997, I served as a Steward for the Union.  From 1998 through the present, I served as a Chief Steward for the Union.



EXHIBIT
*E*

4.      My duties as Chief Steward include meeting with Company representatives regarding grievances and other issues.  This time is paid by the Company.  I use the time reporting code Miscellaneous Absence Union Paid, or MXUP, for those hours spent meeting with the Company.  When reporting my MXUP time, I have not, at any time, used the MXUP subcodes, nor have I been directed to do so.

5.      Since 1998, my duties as Chief Steward relating to grievances include the following: (1) meeting with members to determine if their complaints concern Company actions that violate the CBA; (2) preparation and filing of grievances; (3) investigating grievances; (4) interviewing witness concerning potential or actual grievances, (5) processing grievance paperwork, (6) obtaining information from company relevant to grievances, (7) conferring with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues, (8) preparing for arbitration of grievances, (9) attending and participating in grievance arbitration proceedings, and (10) conferring with or drafting letters to members concerning the results of their grievances.  Time spent working on such activities is paid by the Union.  However, I do report such time to the Company.  I use the time reporting code Miscellaneous Absence Union Unpaid, or MXUU, for those hours spent working on grievance-related issues.  Since 1998, at least 95% of my MXUU time was spent on such issues.

6.      My duties as Chief Steward also have included the following activities not related to grievances: (1) attending Union staff meetings regarding internal Union matters; and (2) attending conferences relating to stewards.  This time has been paid by the Union and reported to the Company under the MXUU time code.  This time accounted for no more than 5% of my total MXUU time.

7.      Since at least 2004, I have reported both MXUP and MXUU time to the Company for each of my workweeks while working as Chief Steward for the Union.

8.      The Company granted my FMLA leave requests for the following periods: September 26, 2000 through September 28, 2000; April 23, 2001 through April 25, 2001; February 15, 2002 through February 19, 2002; March 5, 2003 through March 7, 2003; and February 23, 2004 through February 27, 2004. For the 12-month periods prior to each of those leaves, I would not have met the 1,250-hour requirement without counting my MXUU time.

9.      The Company granted my request for disability leave for the period June 5, 2006 through July 4, 2006. FMLA leave is automatically requested for periods of disability. I was informed by letter dated June 15, 2006 that the Company denied my request for FMLA leave for the period June 5, 2006 through July 4, 2006 because I had not worked 1,250 hours in the 12-month period prior to June 5, 2006. As a result of being absent for the period June 5, 2006 through July 4, 2006 without being approved for FMLA leave, the Company suspended me for one day for which I lost one day of pay.

10.      In December 2006, I was disciplined by the Company for alleged remarks that I made to a Company security guard prior to a pre-discipline investigatory meeting. The incident occurred when a Union member had requested Union representation during an interrogation by the Company. I responded to the request and went to the designated conference room where the interrogation was taking place. When I arrived I had a heated conversation with the Company's security investigator. The Company suspended me for allegedly cursing and raising my voice such that it could be heard on customer calls. The altercation occurred during time that I reported to the Company as MXUU. This suspension was ultimately overturned in a grievance hearing

based on the facts relating to the incident, not on the fact that it had occurred while I was engaged in activity reported as MXUU.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Deborah Maples
Deborah Maples

Executed on June 30, 2008.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MAPLES, DONNA STONER, | ) | |
| GRACE RIVERA, | ) | |
| LOUELLA BYRNES, MICHAEL O'CONNOR, | ) | |
| and LOCAL UNION No. 21 OF THE | ) | No. 07 C 6725 |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| ELECTRICAL WORKERS, AFL-CIO | ) | |
| | ) | Judge Castillo |
| Plaintiffs, | ) | Magistrate Judge Nolan |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS BELL TELEPHONE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF LOUELLA BYRNES

Louella Byrnes, having been duly sworn, on oath deposes and states that if she were

called to testify in the above-captioned matter, she would be competent to testify to the following

facts based upon her personal knowledge, and that these facts are true and correct:

1.      I have worked for Illinois Bell (the "Company") since November 19, 1984.   Since

that date, I have employed as a Service Representative in the Consumer Marketing business unit

of the Company.

2.      I currently reside within this District.

3.      Since January 1, 1992, I have worked for the Union in addition to my duties for

the Company.   Beginning in 1992, I served as a Steward for the Union.   From June 1996

through March 30, 2006, I served as Area Steward and beginning April 1, 2006 through

December 31, 2007, I served as   a Chief Steward for the Union.   Since the Company transferred



my Company duties from Oak Brook to Arlington Heights in December 2007, I have served as a

Steward for the Union at the Company's Arlington Heights facility.

4.    My duties as Chief Steward included meeting with Company representatives

regarding grievances and other issues.   This time was paid by the Company.   I used the time

reporting code Miscellaneous Absence Union Paid, or MXUP, for those hours spent meeting

with the Company.   When reporting my MXUP time, I have not, at any time, used the MXUP

subcodes.

5.    Between January 1, 1996 and December 31, 2007, my duties as Chief Steward

relating to grievances included the following: (1) meeting with members to determine if their

complaints concern Company actions that violate the CBA; (2) preparation and filing of

grievances; (3) investigating grievances; (4) interviewing witness concerning potential or actual

grievances, (5) processing grievance paperwork, (6) obtaining information from company

relevant to grievances, (7) conferring with other stewards and union officers concerning

grievances and arbitrations, including whether to pursue such avenues, (8) preparing for

arbitration of grievances, (9) attending and participating in grievance arbitration proceedings, and

(10) conferring with or drafting letters to members concerning the results of their grievances.

Time spent working on such activities was paid by the Union.   However, I did report such time

to the Company.   I used the time reporting code Miscellaneous Absence Union Unpaid, or

MXUU, for those hours spent working on grievance-related issues.   Between April 1, 2006 and

December 31, 2007, at least 95% of my MXUU time was spent on such issues.

6.    My duties as Chief Steward also have included the following activities not related

to grievances: (1) attending Union staff meetings regarding internal Union matters; and (2)

attending conferences relating to stewards.   This time has been paid by the Union and reported

to the Company under the MXUU time code.   This time accounted for less than 5% of my total MXUU time.

7.      During the period January 1, 1996 to December 31, 2007, I reported both MXUP and MXUU time to the Company for each of my workweeks while working as a Area Steward/Chief Steward for the Union.

8.      The Company granted my FMLA leave requests for the following periods: December 8, 1997 through December 30, 1997; January 22 through January 24, 2001; August 5, 2004; and May 15 through May 16, 2006.   For the 12-month periods prior to each of those leaves, I would not have met the 1,250-hour requirement without counting my MXUU time.

9.      I requested FMLA leave from the Company on January 19, 2007 for the period January 19, 2007 through January 22, 2007.   The Company denied the FMLA leave on January 24, 2007 because I had not worked 1,250 hours in the 12-month period prior to January 19, 2007. As a result of being absent for the period January 19, 2007 through January 22, 2007 without being approved for FMLA leave, I was counseled by my manager.


I declare under penalty of perjury that the foregoing is true and correct.


s/ Louella Byrnes_____

Louella Byrnes


Executed on June 30, 2008.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH MAPLES, DONNA STONER,** | ) | |
| **GRACE RIVERA,** | ) | |
| **LOUELLA BYRNES, MICHAEL O'CONNOR,** | ) | |
| **and LOCAL UNION No. 21 OF THE** | ) | No. 07 C 6725 |
| **INTERNATIONAL BROTHERHOOD OF** | ) | |
| **ELECTRICAL WORKERS, AFL-CIO** | ) | |
| | ) | **Judge Castillo** |
| **Plaintiffs,** | ) | **Magistrate Judge Nolan** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ILLINOIS BELL TELEPHONE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DECLARATION OF DONNA STONER

Donna Stoner, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I have worked for Illinois Bell (the "Company") since September 30, 1991.   I have been employed as a Customer Service Representative in the Consumer business unit of the Company since September 30, 1991.

2.      I currently reside within this District.

3.      Since June 25, 2000, I have worked for the Union in addition to my duties for the Company.   Beginning in approximately July 1997, I served as a Steward for the Union.   Since early 2000, I have served as an Area Steward for the Union.



EXHIBIT
G

4.    My duties as Area Steward included meeting with Company representatives regarding grievances and other issues.   This time was paid by the Company.   I used the time reporting code Miscellaneous Absence Union Paid, or MXUP, for those hours spent meeting with the Company.   When reporting my MXUP time, I have not, at any time, used the MXUP subcodes, nor have I been directed to do so.

5.    Since 2000, my duties as Area Steward relating to grievances include the following: (1) meeting with members to determine if their complaints concern Company actions that violate the CBA; (2) preparation and filing of grievances; (3) investigating grievances; (4) interviewing witness concerning potential or actual grievances, (5) processing grievance paperwork, (6) obtaining information from company relevant to grievances, (7) conferring with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues, (8) preparing for arbitration of grievances, (9) attending and participating in grievance arbitration proceedings, and (10) conferring with or drafting letters to members concerning the results of their grievances.   Time spent working on such activities is paid by the Union.   However, I do report such time to the Company.   I use the time reporting code Miscellaneous Absence Union Unpaid, or MXUU, for those hours spent working on grievance-related issues.   Since 2000, at least 95% of my MXUU time was spent on such issues.

6.    My duties as Area Steward also have included the following activities not related to grievances: (1) attending Union staff meetings regarding internal Union matters; and (2) attending conferences relating to stewards.   This time has been paid by the Union and reported to the Company under the MXUU time code.   This time accounted for no more than 5% of my total MXUU time.

7.      In addition to my regular hours of work for the Company as a Customer Service Representative, I have reported both MXUP and MXUU time to the Company for each of my workweeks while working as an Area Steward for the Union.

8.      The Company granted my FMLA leave requests for the following periods: June 26, 2002 through June 28, 2002; February 8, 2003 through February 11, 2003; August 1, 2004 through August 4, 2004; and January 11, 2005.   For the 12-month periods prior to each of those leaves, I would not have met the 1,250-hour requirement without counting my MXUU time.

9.      I requested FMLA leave from the Company FMLA leave for the following dates: January 30, 2006, May 8, 2006, and January 8, 2007.   The Company denied the January 30, 2006 leave on February 6, 2006 because I had not worked 1,250 hours in the 12-month period prior to January 19, 2007.   As a result of being absent on January 30, 2006 without being approved for FMLA leave, I was counseled by my manager.   As a result of being absent on May 8, 2006 without being approved for FMLA leave, I was given a First Written Warning by my manager.   As a result of being absent on January 8, 2007, I was given a Final Written Warning by my manager.

I declare under penalty of perjury that the foregoing is true and correct.

s/Donna Stoner
Donna Stoner

Executed on June 30, 2008.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MAPLES, DONNA STONER,<br>GRACE RIVERA, LOUELLA BYRNES,<br>MICHAEL O'CONNOR, and<br>LOCAL UNION No. 21 OF THE<br>INTERNATIONAL BROTHERHOOD OF<br>ELECTRICAL WORKERS, AFL-CIO | )<br>)<br>)<br>)<br>)<br>) | No. 07 C 6725 |
| | )<br>) | **Judge Castillo** |
| Plaintiffs, | )<br>) | **Magistrate Judge Nolan** |
| v. | )<br>) | |
| ILLINOIS BELL TELEPHONE<br>COMPANY, | )<br>)<br>) | |
| Defendant. | )<br>) | |

### DECLARATION OF MICHAEL O'CONNOR

Michael O'Connor, having been duly sworn, on oath deposes and states that if he were called to testify in the above-captioned matter, he would be competent to testify to the following facts based upon his personal knowledge, and that these facts are true and correct:

1.    I have worked for Illinois Bell (the "Company") since January 29, 1996.   I have been employed as a Customer Systems Tech in the Customer Provisioning and Maintenance business unit of the Company since January 29, 1996.

2.    I currently reside within this District.

3.    Since approximately October 2000, I have worked for the Union in addition to my duties for the Company.   Beginning in 2000, I served as a Steward for the Union.   Since March 2002, I have served as a Chief Steward for the Union.

4.    My duties as Chief Steward included meeting with Company representatives



EXHIBIT
*H*

regarding grievances and other issues.   This time was paid by the Company.   I used the time reporting code Miscellaneous Absence Union Paid, or MXUP, for those hours spent meeting with the Company.

5.    Since March , 2002, my duties as Chief Steward relating to grievances have include the following: (1) meeting with members to determine if their complaints concern Company actions that violate the CBA; (2) preparation and filing of grievances; (3) investigating grievances; (4) interviewing witness concerning potential or actual grievances, (5) processing grievance paperwork, (6) obtaining information from company relevant to grievances, (7) conferring with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues, (8) preparing for arbitration of grievances, (9) attending and participating in grievance arbitration proceedings, and (10) conferring with or drafting letters to members concerning the results of their grievances.   Time spent working on such activities is paid by the Union.   However, I do report such time to the Company.   I use the time reporting code Miscellaneous Absence Union Unpaid, or MXUU, for those hours spent working on grievance-related issues.   Since March, 2002, at least 95% of my MXUU time was spent on such issues.

6.    My duties as Chief Steward also have included the following activities not related to grievances: (1) attending Union staff meetings regarding internal Union matters; and (2) attending conferences relating to stewards.   This time has been paid by the Union and reported to the Company under the MXUU time code.   This time accounted for less than 5% of my total MXUU time.

7.    Since 2004, I have reported both MXUP and MXUU time to the Company for each of my workweeks while working as chief steward for the Union.

8.    I requested FMLA leave from the Company on May 18, 2007 for the period May 15, 2007 through July 9, 2007.   The Company denied the FMLA leave on May 21, 2007 because I had not worked 1,250 hours in the 12-month period prior to May 15, 2007.   As a result of being absent for the period May 15, 2007 through July 9, 2007 without being approved for FMLA leave, I was counseled by my manager on September 14, 2007.


I declare under penalty of perjury that the foregoing is true and correct.


s/ Michael O'Connor
Michael O'Connor


Executed on June 30, 2008.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBORAH MAPLES, DONNA STONER,** | ) | |
| **LAVONNE PURKEY, GRACE RIVERA,** | ) | |
| **LOUELLA BYRNES, MICHAEL O'CONNOR,** | ) | |
| **and LOCAL UNION No. 21 OF THE** | ) | No. 07 C 6725 |
| **INTERNATIONAL BROTHERHOOD OF** | ) | |
| **ELECTRICAL WORKERS, AFL-CIO** | ) | |
| | ) | **Judge Castillo** |
| **Plaintiffs,** | ) | **Magistrate Judge Nolan** |
| | ) | |
| **5.** | ) | |
| | ) | |
| **ILLINOIS BELL TELEPHONE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DECLARATION OF GRACE RIVERA

Grace Rivera, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1. I have worked for Illinois Bell (the "Company") since September 17, 2001. I have been employed as a Service Representative in the Consumer business unit of the Company since September 17, 2001.

2. I currently reside within this District.

3. Since March 1, 2004, I have worked for the Union in addition to my duties for the Company. Beginning on March 1, 2004, I served as a Steward for the Union. Between May 2005 and April 2008, I served as a Grievance Clerk for the Union in addition to my duties as steward.

**EXHIBIT I**

4.    My duties as Steward include meeting with Company representatives regarding grievances and other issues.   This time was paid by the Company.   The clerk who reported my time to the Company used the time reporting code Miscellaneous Absence Union Paid, or MXUP, for those hours spent meeting with the Company.   When directing the clerk to report my time that is coded MXUP, I did not, at any time, instruct the clerk to use MXUP subcodes, nor was I directed to do so.

5.    My duties as Steward and Grievance Clerk relating to grievances included the following: (1) met with members to determine if their complaints concerned Company actions that violated the CBA; (2) preparation and filing of grievances; (3) investigated grievances; (4) interviewed witness concerning potential or actual grievances, (5) processed grievance paperwork, (6) obtained information from company relevant to grievances, (7) conferred with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues, (8) prepared for arbitration of grievances, (9) attended and participated in grievance arbitration proceedings, (10) conferred with or drafting letters to members concerning the results of their grievances, (11) labeled and filed grievances for other stewards, (12) performed research for use in processing grievances, and (13) assisted the compilation of documentation in preparation for grievance hearings.   Time spent working on such activities was paid by the Union.   However, I did report such time to the Company.   The clerk who reported my time to the Company used the time reporting code Miscellaneous Absence Union Unpaid, or MXUU, for those hours spent working on grievance-related issues.   Since March 2001, at least 95% of my MXUU time was spent on such issues.

6.    My duties as Steward also included the following activities not related to grievances: (1) attending Union staff meetings regarding internal Union matters; and (2)

attending conferences relating to stewards. This time was paid by the Union and reported to the Company under the MXUU time code. This time accounted for less than 5% of my total MXUU time.

7.      For the 12-month periods prior to my FMLA leaves at issue in this case, I reported both MXUP and MXUU time to the Company for each of my workweeks while working as a Steward for the Union. That time was in addition to the time I spent performing my regular work duties for the Company.

8.      I requested FMLA leave from the Company for all of the following periods: February 13, 2006 through February 14, 2006; March 28, 2006; April 3, 2006 through April 4, 2006; April 10, 2006; May 15, 2006; and August 5, 2006. The Company denied my requests for each of those periods due to the fact that I did not satisfy the 1,250 hour requirement for the 12-month period prior to those leaves. As a result of taking leave on August 5, 2006, the Company informed me on August 14, 2006 that I was suspended for three days.


I declare under penalty of perjury that the foregoing is true and correct.


s/ Grace Rivera_____
Grace Rivera


Executed on June 30, 2008.

DEBORAH MAPLES, ET AL                                              JOE ATILANO
ILLINOIS BELL TELEPHONE COMPANY

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

DEBORAH MAPLES, ET AL        )
    Plaintiffs               )
                      )

VS.                          ) Case No. 07-C-675
                      )

ILLINOIS BELL TELEPHONE      )  Judge Castillo
COMPANY                      )  Magistrate Judge Nolan
    Defendant                )

************************************************************

TELEPHONIC ORAL DEPOSITION OF JOE ATILANO

MAY 12, 2008

VOLUME 1 OF 1

COPY

************************************************************

        ORAL DEPOSITION OF JOE ATILANO, produced
as a witness at the instance of the Plaintiff, and
duly sworn, was taken in the above-styled and numbered
cause on the 12th of May, 2008, from 2:10 p.m. to
4:40 p.m., VIA TELEPHONE, before DANDY ELLIS, CSR in
and for the State of Texas, reported by machine
shorthand, at AT&T, 105 Auditorium Circle, San
Antonio, Texas, pursuant to the Federal Rules of Civil
Procedure and the provisions stated on the record or
attached hereto.

      *  *  *  *  *  *  *  *  *  *



EXHIBIT
J

DEBORAH MAPLES, ET AL                                              JOE ATILANO
ILLINOIS BELL TELEPHONE COMPANY

Page 26

1     Q.    Is that -- Was that the case from the -- from

2   May of 2003 forward?

3     A.    That is correct.

4     Q.    Okay.  Now, in May 2003 -- Excuse me, how do

5   we refer to your business group?  Are you a

6   department?  How do I refer to you and your people?

7     A.    You can refer to it as the FMLA processing

8   unit.

9     Q.    Okay.  All right.  In May 2003, with regard

10  to Illinois Bell, when the mechanized system was

11  implemented, how did the FMLA processing unit account

12  for absences, unpaid absences for union business?

13    A.    Well, I can tell you from -- just from

14  familiarizing myself with -- with the -- with the case

15  when I was doing my declaration, that I had -- I

16  verified that at the time unpaid union time was

17  being -- I believe was being counted as hours worked.

18    Q.    That would be for purposes of FMLA

19  eligibility?

20    A.    Correct.

21    Q.    So the hours that were -- where an employee

22  was absent for union business was credited towards the

23  1250 hour requirement for FMLA eligibility, correct?

24    A.    That is what the system -- that is how the

25  system was -- was picking up that time, sir.

DEBORAH MAPLES, ET AL                                        JOE ATILANO
ILLINOIS BELL TELEPHONE COMPANY

                                                              Page 30

1   the IBEW?

2            MS. LINDNER:  Objection to the form of

3   the question.  Mischaracterizes prior testimony.

4       A.   Yeah, after -- after attempting to confirm

5   that, and unsuccessfully, I did -- I did assume that

6   it -- that it would follow the same rules.

7       Q.   (BY MR. BLOCH) Okay.  Had anyone told you

8   that there was specific CWA contract language

9   accounting for that time back in May of 2003?

10      A.   I can't recall whether they cited specific

11  language.

12      Q.   Mr. Atilano, let me just make sure I

13  understand this.  In May of 2003, with regard to

14  Illinois Bell and the IBEW, did you speak to anyone at

15  all about this question of unpaid absences for union

16  business?

17      A.   And again, this is -- you're referring to

18  just Illinois Bell and whether it was IBEW time or CWA

19  time, right?  You're just talking in general?

20      Q.   No.  I'm talking about the period around

21  May 2003 when you implemented the mechanized system.

22      A.   Right.

23      Q.   And specifically with regard to Illinois Bell

24  and the IBEW.

25      A.   Okay.

DEBORAH MAPLES, ET AL                                      JOE ATILANO
ILLINOIS BELL TELEPHONE COMPANY

Page 31

1      Q.    My question is, did you speak to anybody

2   about the question of accounting for unpaid absences

3   for union business?

4      A.    I don't recall whether -- I don't recall, or

5   I don't believe I spoke to anyone.

6      Q.    Okay.  Do you recall the specific code that

7   was used to identify unpaid absence for union

8   business?

9      A.    Yes, I think it's MXUU.

10     Q.    Okay.  And do you recall the code that was

11  used for paid time for certain union business?

12     A.    Yes, I think that's MXUP.

13     Q.    Okay.  So is it correct that the -- that the

14  codes MXUU and MXUP have been utilized since the

15  mechanized system was first implemented in May 2003?

16     A.    Yes, I think they've been around that long.

17     Q.    Okay.  And since -- I know I'm being

18  repetitious, but I'm just going to state it another

19  way.  That in May 2003, both MXUU time and MXUP time

20  was credited for purposes of satisfying the 1250 hour

21  FMLA requirement, correct?

22     A.    Yes, that's how the system was picking it up,

23  correct.

24     Q.    Okay.  At what time, if any, did the company

25  stop crediting MXUU time toward the 1250 hour