IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DEBORAH MAPLES, et al.,** ) | |
| ) | No. 07 C 6725 |
| ) | |
| **Plaintiffs,** ) | **Judge Castillo** |
| ) | **Magistrate Judge Nolan** |
| ) | |
| **ILLINOIS BELL TELEPHONE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**CORRECTED**
**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs DEBORAH MAPLES, DONNA STONER, GRACE RIVERA, LOUELLA BYRNES, and MICHAEL O'CONNOR ("Plaintiffs"), through their attorneys Dowd, Bloch & Bennett, submit the following statement of material facts as to which there is no genuine issue and that entitle plaintiffs to partial summary judgment as a matter of law:

1. Plaintiffs are employees of Illinois Bell Telephone Company (the "Company"). (Defendant's Answer, ¶ 2, 3, 5, 6, 7). Plaintiffs are also employees and members of the International Brotherhood of Electrical Workers Local 21 (the "Union"). (Declaration of Kevin Curran, ¶ 7, attached as Exhibit A).

2. The Union is an unincorporated association with a place of business in Downers Grove, Illinois, where it is engaged in the business of representing employees in bargaining with employers, including the Company, with respect to wages, hours, and other terms and conditions

of employment. (Curran Decl., ¶ 4; Def. Ans., ¶ 18).

    3.     The current collective bargaining agreement between the Company and the Union is effective June 27, 2004 through June 27, 2009 ("CBA"). (Curran Decl., ¶ 6). The Company and Union (or the Union's predecessor unions) have maintained a collective bargaining relationship since at least 1947. (Curran Decl., ¶ 6).

    4.     The CBA contains the following relevant provisions:

**Stewards & Orientation**

**11.03** The Company will recognize Stewards selected in accordance with the Union rules and regulations as the Union representatives of the employees in the respective groups for which they are chosen. The Company also recognizes that the displacing of a Steward is the function of the Union. The Union will notify the Company of the identity of Stewards and, within five (5) working days, of any change in Stewards' status. When practical, Stewards shall not leave their work without notifying their supervisors.

**Payment For Joint Meeting Time**
**11.06** For purposes of processing grievances, the Company agrees to permit authorized Union representatives to confer with representatives of the Company without loss of pay during such employees' regularly scheduled working hours. In addition, such employees shall suffer no loss in pay for reasonable time spent during such regularly scheduled working hours in traveling for grievance meetings.

**11.07** When the Company agrees to meet with a Union representative for purposes other than the processing of grievances and further agrees to pay for the time of the Union representative involved, such time shall be paid in accordance with the terms of this Agreement.

**11.08** Employees who are excused in accordance with the provisions of this Section and Article 9 (Collective Bargaining Procedures), shall give his/her immediate supervisor reasonable notice of the intended absence and of the probable duration of the absence.

**Absence For Union Business**
**11.09** The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union the necessary time off without pay to transact business of the Union, provided that the Company is given reasonable

advance notice of such absence.

**11.10**  It is understood that all absences mentioned in this Section pertain to the administration of this Collective Bargaining Agreement unless mutually agreed upon between the Local Union Business Manager and the appropriate Director - Labor Relations.

**11.11**  Excused absences for Union business include absences by Union officers or properly designated representatives of the Union to perform administrative duties concerning their Locals. In addition, such duties are understood to include attendance at conventions and training classes associated with those administrative duties, and Telephone Coordination Council meetings, by those officials or by their designated representatives.

**11.12**  Such excused absences do not include absences in connection with organizing activities with other employees, grievance and arbitration proceedings with other employers, or other activities related to the administration of collective bargaining agreements with other employers.

**Leave Of Absence For Union Business**
**11.16**  A Union representative upon return from an excused absence or leave of absence, shall be reinstated to the same job title or a job title of equal pay to that in which the employee was engaged immediately preceding the absence subject to the provisions of this Agreement relating to layoffs. The employee shall be placed on the payroll at the rate then in effect for his/her assignment and for the period of service which was credited for wage purposes at the start of the leave of absence. No physical or other examination shall be required for reinstatement. However, the Company reserves the right to have such person examined to determine fitness for work or job placement if required by the law or if the Company would also subject any other employee returning from an excused absence or leave of absence to the same examination.

**BENEFITS**
**17.01**  No change shall be made in the terms of the existing:
Ameritech Pension Plan
SBC Flexible Spending Account Plan
SBC Adoption Reimbursement Program
SBC Savings and Security Plan
SBC Rules for Employee Beneficiary Designations
SBC Umbrella Benefit Plan No. 1 comprised of the following programs:
Ameritech Comprehensive Health Care Plan
Ameritech Dental Expense Plan
Ameritech Vision Care Plan

SBC CarePlus – A Supplemental Medical Plan
SBC Medical and Group Life Insurance Plan
Ameritech Sickness and Accident Disability Benefit Plan
Ameritech Long Term Disability Plan
SBC Umbrella Benefit Plan No. 2 comprised of the following programs:
SBC Supplementary Group Life Insurance Program
SBC Dependent Group Life Insurance Program
SBC Group Long-Term Care Insurance Plan
SBC EAP Plan
or their successor Plans and those other Benefits/Welfare related
items, which would reduce or diminish the benefits or privileges provided
thereunder as they apply to employees represented by the Union
without the consent of the Union.

**SCHEDULING AND PAYMENT FOR TIME WORKED
FOR EMPLOYEES REPRESENTED BY LOCAL UNION 21
APPENDIX B EXHIBITS 1, 2 AND 3**
**Overtime & Premium Pay**
**18.14**  Employees shall be paid at the overtime rate of one and one-half
(1 1/2) times their basic hourly wage rate including applicable differentials
for work performed under the following conditions, except as
provided in paragraph 18.15 below:
(A) Time worked in excess of eight (8) hours in a day; or
(B) Time worked in excess of forty (40) hours in a week; or
(C) Time worked on a non-scheduled day; or
(D) Time worked on a call out.

**18.18**  For the purpose of crediting time not worked towards an employee's
eligibility for overtime payments (as defined in paragraphs 18.14 and
18.15 above) only the following absences during a scheduled shift
shall be considered:
• Illness (Paid)
• Death in Family (Paid)
• Jury or Other Court Duty (Paid)
• Severe Weather (if employee reports to work)
• Visit to Medical Facility or Company-Designated Physician
at Company's Request
• Travel Time at Company's Request
• Civic Affairs (such as Community Fund, Red Cross, etc.)
when Assigned by Company
• Authorized Attendance at Joint Meetings with the Company
including Joint Union-Company Committee Meetings,
Grievance Meetings and Union-Management Review
Board Meetings
• Excused Time for Union Business (Unpaid)
• Vacation Days and Vacation Weeks

- Recognized Holidays
- Excused Work Days (Paid and Unpaid)
- Excused Time Requested by Company
- Collective Bargaining with the Company
- Sickness and Accident Disability (Paid)
- Leave of Absence (Paid)

**SCHEDULING AND PAYMENT FOR TIME WORKED
FOR EMPLOYEES REPRESENTED BY
LOCAL UNION 21
APPENDIX B EXHIBITS 4 AND 5
Overtime & Premium Pay**

**19.12**  Employees shall be paid at the overtime rate of one and one-half
(1 1/2) times their basic hourly wage rate including applicable differentials
for work performed under the following conditions, except as
provided in paragraph 19.13 below:
(A) Time worked in excess of eight (8) hours in a day; or
(B) Time worked in excess of forty (40) hours in a week; or
(C) Time worked on a non-scheduled day; or
(D) Time worked on a call out.

**19.16**  For the purpose of crediting time not worked towards an employee's
eligibility for overtime payments (as defined in paragraphs 19.12 and
19.13 above) only the following absences during a scheduled shift
shall be considered:
- Illness (Paid)
- Death in Family (Paid)
- Jury or Other Court Duty (Paid)
- Severe Weather (if employee reports to work)
- Visit to Medical Facility or Company-Designated Physician at
Company's Request
- Travel Time at Company's Request
- Civic Affairs (such as Community Fund, Red Cross, etc.)
when Assigned by Company
- Authorized Attendance at Joint Meetings with the Company including
Joint Union-Company Committee Meetings, Grievance Meetings
and Union-Management Review Board Meetings
- Excused Time for Union Business (Unpaid)
- Vacation Days and Vacation Weeks
- Recognized Holidays
- Excused Work Days (Paid and Unpaid)
- Excused Time Requested by Company
- Collective Bargaining with the Company
- Sickness and Accident Disability (Paid)
- Leave of Absence (Paid)

(Curran Decl., ¶ 16).

5.  Pursuant to sections 11.06 through 11.08, the Company allows stewards time off for meeting time with Company representatives during the stewards' normal working hours. These provisions have been in the CBA since 1995. (Curran Decl., ¶ 17).

6.  Wages for hours spent in activities falling within Sections 11.06 of the CBA are paid by the Company and are recorded by the Company under the time code "MXUP," which means "Miscellaneous Absence – Union – Paid." (Curran Decl., ¶ 8). The Company credits MXUP hours toward payment for overtime at time and one-half of the regular rate of pay for hours worked in excess of 40 in a week. (Deposition of Janine King, 25:22-26:13, attached as Exhibit B); CBA §§ 18.14, 18.18, 19.12, 19.16). Those hours are also credited toward fringe benefits eligibility. (Declaration of Lynn Arwood, ¶ 4, attached as Exhibit C).

7.  Pursuant to sections 11.09 through 11.12, the Company allows stewards time off during the stewards' normal working hours to perform duties related to the enforcement of the contract and internal union business. These provisions have been in the CBA since 1995. (Curran Decl., ¶ 17).

8.  Wages for hours spent in activities falling within Section 11.09 of the CBA are paid by the Union and recorded by the Company under the time code "MXUU," which means "Miscellaneous Absence – Union – Unpaid." (Curran Decl., ¶ 10).

9.  MXUU hours are credited by the Company toward payment of overtime at one and one-half the regular rate of pay under Sections 18.18 and 19.16 for hours in excess of 40 during the workweek. (King Dep, 45:12-46:7; CBA §§ 18.14, 18.18, 19.12, 19.16). MXUU hours are credited by the Company toward eligibility for Company-provided fringe benefits, including health benefits, pension benefits, disability benefits, life insurance benefits, monetary

team performance awards and vacation time. If MXUU hours were not counted, some of the fringe benefits would be diminished. (Stipulation (attached as Exhibit D); Arwood Decl., ¶ 4).

10. MXUU and MXUP time are tracked by the Company with the same level of specificity. Though the Company's time reporting manual includes subcodes for MXUP time (also called "reason codes"), the Company does not require that such subcodes be recorded and does not track such subcodes. (King Dep., 37:3 - 39:11; Curran Decl., ¶ 13; Maples Decl., ¶ 4, 7).

11. Since at least December 2004, Plaintiffs have spent over 95% of their MXUU hours performing collective bargaining agreement enforcement. These activities include the following: (1) meeting with members to determine if their complaints concern Company actions that violate the CBA; (2) preparation and filing of grievances; (3) investigating grievances; (4) interviewing witness concerning potential or actual grievances, (5) processing grievance paperwork, (6) obtaining information from company relevant to grievances, (7) conferring with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues, (8) preparing for arbitration of grievances, (9) attending and participating in grievance arbitration proceedings, and (10) conferring with or drafting letters to members concerning the results of their grievances. (Declaration of Deborah Maples, ¶ 5, attached as Exhibit E; Declaration of Louella Byrnes, ¶ 5, attached as Exhibit F; Declaration of Donna Stoner, ¶ 5, attached as Exhibit G; Declaration of Michael O'Connor, ¶ 5, attached as Exhibit H; Declaration of Grace Rivera, ¶ 5, attached as Exhibit I; Curran Decl., ¶ 10).

12. Since at least December 2004, no more than 5% of the Plaintiffs' MXUU time is involved with attending conferences, steward training and other internal union business. (Maples Decl., ¶ 6; Byrnes Decl., ¶ 6; Stoner Decl., ¶ 6; O'Connor Decl., ¶ 6; Rivera Decl., ¶ 6; Curran

Decl., ¶ 11).

13.     Plaintiffs' workweek is divided between MXUU time and MXUP time and, in some cases, their regular Company work duties. (Maples Decl., ¶ 7; Byrnes Decl., ¶ 7; Stoner Decl., ¶ 7; O'Connor Decl., ¶ 7; Rivera Decl., ¶ 7; Curran Decl., ¶ 12).

14.     During the 12-month periods prior to the dates on which the Plaintiffs requested FMLA leave from the Company, the Plaintiffs' MXUU time when counted alone did not exceed 1,250 hours. (Curran Decl., ¶ 15) During those same periods, the aggregate of Plaintiffs' MXUP time and their regular work hours did not exceed 1,250 hours. (Curran Decl., ¶ 15). During those same periods, the aggregate of each Plaintiff's MXUU time spent on contract enforcement, MXUP time, and regular work hours exceeded 1,250 hours. (Curran Decl., ¶ 15).

15.     The Union is affiliated with the International Brotherhood of Electrical Workers (the "International"), which is located in Washington, D.C. (Curran Decl., ¶ 5). The Union remits over $1 million in dues and other assessments to the International annually. (Curran Decl., ¶ 5).

16.     When performing their regular duties for the Company, the stewards are under the supervision, direction and control of the Company. (Curran Decl., ¶ 18).

17.     When performing MXUU and MXUP time, stewards are subject to both Local 21's work rules and Illinois Bell's work rules, including the Company's Code of Conduct and the Company's policy with respect to attendance. (Curran Decl., ¶ 18). For example, the Company disciplined Plaintiff Maples while performing MXUU-coded duties due to her alleged conduct prior to a pre-discipline investigatory meeting in December 2006. (Maples Decl., ¶ 10).

18.     The Union provides a supplemental life insurance benefit for some employees of the Union in an amount equal to one times their annual Union salary. (Arwood Decl. ¶ 5). The

8

Union provides no other fringe benefits for which the Plaintiffs (or any other stewards) are eligible. (Arwood Decl., ¶ 5).

19. Employees must be employed by the Company in order for the Union to hire them as Stewards. The Union cannot appoint and place individuals from outside the Company's workforce as Company stewards. (Curran Decl., ¶ 20; CBA § 11.03).

20. The Union has the power to fire the Stewards (Curran Decl., ¶ 19). Fired Stewards remain employed by the Company in their regular Company position under the terms of the CBA. (CBA § 11.16). But if the Company fires the Stewards, they cannot be employed as stewards by the Union. (Curran Decl., ¶ 19).

21. When employees become stewards, they become stewards in the department where they are working at the time of the appointment. The Union cannot re-assign the stewards to work in different departments. (Curran Decl., ¶ 20).

22. The Company may also transfer employees over the objection of the employee and the Union. If the Company transfers a Steward to a different department that already has a steward, the Union must dismiss the steward. (Curran Decl. ¶ 20).

23. Between 1993 and 1998, there are no instances reported to the Union where the Company failed to credit steward hours spent on duties currently coded MXUU toward FMLA eligibility. (Curran Decl. ¶ 25).

24. Between 1998 and December 2005, the Company credited steward hours spent on duties currently coded MXUU toward FMLA eligibility. If the Company had failed to credit MXUU hours for FMLA eligibility, most or all stewards would have been denied FMLA leave during this period. (Curran Decl. ¶ 26).

25. From May 2003 until July 2005, the Company maintained a mechanized system

used to determine employees' FMLA eligibility under which it credited MXUU time toward FMLA eligibility. (Deposition of Joe Atilano (attached as Exhibit J), 26:9-25; 31:17-32:4). Some time in July 2005, the Company stopped counting MXUU time toward FMLA eligibility without notice to the Union. (Atilano Dep., 31:24-32:4; Curran Decl., ¶ 21).

      26.    Plaintiff stewards were granted FMLA leave based on crediting MXUU hours for FMLA eligibility on many occasions prior to December 2005. Maples was granted FMLA leave in September, 2000; April, 2001; February, 2002; March, 2003; and February, 2004. (Maples Decl., ¶ 8). Byrnes was granted FMLA leave in December, 1997; January, 2001; August, 2004; and May, 2006. (Byrnes Decl., ¶ 8). Stoner was granted FMLA leave in June, 2002; February, 2003;, August, 2004; and January, 2005. (Stoner Decl., ¶ 8). For the 12-month periods prior to each of those leaves, the Plaintiffs would not have met the 1,250-hour requirement if their MXUU time did not count toward FMLA eligibility. (Maples Decl., ¶ 8; Byrnes Decl., ¶ 8; Stoner Decl., ¶ 8).

      27.    The Company never asserted to the Union in negotiating the current 2004-2009 CBA, or any prior labor contract negotiations, that activities currently reported as MXUU are not counted toward 1,250-hour of service rule for FMLA eligibility. (Curran Decl., ¶ 21). The Union did not become aware of the Communications Workers of America's agreement with the Company with respect to counting MXUU-reported time toward FMLA eligibility until October, 2005. (Curran Decl., ¶ 21). After the effective date of the current CBA, the Company continued to credit MXUU time toward FMLA eligibility until at least July 2005. (Atilano Dep., 26:9-25; 31:17-32:4).

      28.    When the Union became aware that the Company stopped crediting MXUU time toward FMLA eligibility in October 2005, Union did not request bargaining over the matter or a

modification of the current CBA. (Curran Decl., ¶ 22). Rather, Union representatives asserted that its stewards were already entitled to crediting MXUU time toward FMLA eligibility. (Curran Decl., ¶ 22).

29. Beginning in December 2005, the Company first began denying FMLA leave to stewards based on its refusal to credit MXUU time toward FMLA eligibility. (Curran Decl., ¶ 14).

30. No provision of the CBA references FMLA leave, nor does the CBA confer rights that are substantially identical to those provided under the FMLA. (Curran Decl., ¶ 23).

31. The Union filed grievances on behalf of Louella Byrnes and Donna Stoner for the Company's denial of their FMLA leaves. (Curran Decl., ¶ 24). The Company refused to arbitrate those grievances because no provision of the CBA addressed those grievances. (Curran Decl., ¶ 24).

Respectfully submitted this 30th day of June, 2008.

___/s/ Robert E. Bloch___
One of the attorneys for plaintiffs

Robert E. Bloch
Justin J. Lannoye
Steven W. Jados
DOWD, BLOCH & BENNETT
8 S. Michigan Avenue, 19th floor
Chicago, IL   60603
rebloch@dbb-law.com
jlannoye@dbb-law.com
sjados@dbb-law.com