IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH MAPLES, DONNA )
STONER, LAVONNE PURKEY )
GRACE RIVIERA, LOUELLA )
BYRNES, MICHAEL O'CONNOR )
and LOCAL UNION NO. 21 OF THE )
INTERNATIONAL BROTHERHOOD ) No. 07 C 6725
OF ELECTRIC WORKERS, AFL-CIO, )
) Judge Ruben Castillo
Plaintiffs, )
)
v. )
)
ILLINOIS BELL TELEPHONE )
COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

The International Brotherhood of Electric Workers, AFL-CIO, Local 21 (the "Union") and a group of current and former union stewards ("Plaintiff Employees") (collectively "Plaintiffs") bring this action against Illinois Bell Telephone Company ("Defendant") alleging violations of the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601, *et seq.*, and to compel an arbitration of grievances under the Labor Management Relations Act ("LMRA") 29 U.S.C. § 185 and the Federal Arbitration Act ("FAA") 9 U.S.C. § 1 *et seq.* (R. 51, First Am. Compl. ¶ 2.) Presently before the Court are the parties' cross-motions for partial summary judgment on the issue of whether Plaintiffs are entitled to leave under the FMLA. (R. 23, Def.'s Mot. for Partial Summ. J. ("Def.'s Mot."); R. 37, Pls.' Mot. for Partial Summ. J. and Resp. to Def.'s Mot. for Partial Summ. J. ("Pls.' Mot. and Resp.").) For the reasons stated below,

1

Plaintiffs' motion is granted, and Defendant's motion is denied.

## RELEVANT FACTS[1]

Plaintiff Employees work for Defendant and also serve or have served as stewards with the Union at some point between November 2005 and November 2007. (R. 26, Def.'s Facts ¶ 3; R. 40, Pls.' Facts ¶ 1.) Pursuant to the collective bargaining agreement (the "CBA") between Defendant and the Union, stewards are allowed time off for meeting with Defendant's representatives during working hours.[2] (R. 40, Pls.' Facts ¶ 5.) Wages for these hours are paid by Defendant and coded as "Miscellaneous Absence - Union - Paid" ("MXUP"). (*Id.* ¶ 6.) MXUP hours are credited toward overtime payment and benefits eligibility. (*Id.*) The CBA also provides that stewards are allowed time off during working hours to perform duties related to the enforcement of the CBA and internal union business.[3] (*Id.* ¶ 7.) Wages for these hours are paid by the Union and coded as "Miscellaneous Absence - Union - Unpaid" ("MXUU"). (*Id.* ¶ 8; R. 26, Def.'s Facts ¶ 14.) Pursuant to the CBA, stewards are not required to report the nature or

---

[1] The Court takes these facts from the parties' Local Rule 56.1 statements and exhibits. (R. 26, Def.'s Statement of Undisputed Facts in Supp. of its Mot. for Partial Summ. J. ("Def.'s Facts"); R. 40, Pls.' Statement of Undisputed Material Facts in Supp. of their Mot. for Partial Summ. J. ("Pls.' Facts").) Unless otherwise indicated, the facts contained herein are undisputed.

[2] The CBA is effective from June 27, 2004 through June 27, 2009. Section 11.06 of the CBA provides: "For purposes of processing grievances, the Company agrees to permit authorized Union representatives to confer with representatives of the Company without loss of pay during such employees' regularly scheduled working hours. In addition, such employees shall suffer no loss in pay for reasonable time spent during such regularly scheduled working hours in traveling for grievance meetings." (R. 40, Pls.' Facts ¶¶ 3, 4.)

[3] Section 11.09 of the CBA provides: "The Company, insofar as work schedules permit, agrees to grant to any employee who is an Officer or properly designated representative of the Union the necessary time off without pay to transact business of the Union, provided that the Company is given reasonable advance notice of such absence." (*Id.* ¶ 3.)

2

details of the work they perform during MXUU coded time. (R. 26, Def.'s Facts ¶ 13.) Like MXUP hours, MXUU hours are also credited toward overtime payment and benefits eligibility.[4] (R. 40, Pls.' Facts ¶ 9.)

Plaintiff Employees divide their workweek between MXUU and MXUP time, and in some cases their regular duties with the company. (*Id.* ¶ 13.) Since at least December 2004, more than 95% of the MXUU coded hours have been spent performing CBA enforcement duties. (*Id.* ¶ 11.) These activities include: "(1) meeting with members to determine if their complaints concern Company actions that violate the CBA; (2) preparation and filing of grievances; (3) investigating grievances; (4) interviewing witness [sic] concerning potential or actual grievances; (5) processing grievance paperwork; (6) obtaining information from Company relevant to grievances; (7) conferring with other stewards and union officers concerning grievances and arbitrations, including whether to pursue such avenues; (8) preparing for arbitration of grievances; (9) attending and participating in grievance arbitration; (10) conferring with or drafting letters to members concerning the results of their grievances." (*Id.*) The remaining percentage of MXUU time involved attending conferences, steward training and other internal Union business. (*Id.* ¶¶ 11, 12.)

Defendant maintains a mechanized system that pulls data from the eLink payroll system, and is programmed to include and exclude time associated with various time-reporting codes to determine the FMLA 1,250 hour eligibility requirement. (R. 26, Def.'s Facts ¶ 20.) Prior to December 2005, Plaintiff Employees were granted FMLA leave based on crediting MXUU hours

---

[4] Benefits include heath, pension, disability, life insurance, monetary team performance awards and vacation time. (*Id.* ¶ 9.)

3

towards FMLA eligibility. (R. 40, Pls.' Facts ¶¶ 25, 26.) Since November 2005, however, the mechanized system only includes time coded as MXUP towards FMLA eligibility and excludes MXUU-coded time for Union employees.[5] (R. 26, Def.'s Facts ¶¶ 21, 22.) The CBA does not reference FMLA leave, nor does it confer rights that are substantially similar to those provided under the FMLA. (R. 40, Pls.' Facts ¶ 30.)

In October 2005, when the Union became aware that Defendant had stopped crediting MXUU time towards FMLA eligibility, it did not request bargaining over the matter or a modification to the CBA. (*Id.* ¶ 28.) Instead, the Union representatives asserted that its stewards were already entitled to FMLA crediting of MXUU time. (*Id.*) When Defendant denied the FMLA requests of Plaintiffs Louella Byrnes ("Byrnes") and Donna Stoner ("Stoner") based on its refusal to credit MXUU time, the Union filed grievances on their behalf. (*Id.* ¶ 31.) Defendant, however, refuses to arbitrate because no provision of the CBA addresses these grievances. (*Id.*)

## PROCEDURAL HISTORY

On November 29, 2007, Plaintiffs filed this action against Defendant. (R. 1, Compl.) On August 11, 2008, Plaintiffs amended the complaint. (R. 51, First Am. Compl.) In Count I, Plaintiffs allege that Defendant "restrained, denied and interfered" with their rights "by refusing to afford them the rights and privileges under the FMLA in connection with their leaves" and that they were disciplined "for taking FMLA leave to which they were entitled." (*Id.* ¶¶ 15-16.) In Count II, Plaintiffs allege that Defendant has failed to proceed with arbitration of the FMLA grievances as required under the CBA. (*Id.* ¶ 25.)

---

[5] Defendant continues to count MXUU coded time towards FMLA edibility for employees represented by the Communications Workers of America ("CWA") as stipulated by the labor agreement between Defendant and CWA. (R. 26, Def.'s Facts ¶ 22.)

4

On January 29, 2008, this Court granted Defendant leave to file a dispositive motion on the threshold issue of FMLA jurisdiction requirements for Count I. (R. 22, 1/29/2008 Min. Order.) On March 28, 2008, Defendant filed its motion for partial summary judgment. (R. 23, Def.'s Mot.) On July 1, 2008, Plaintiffs filed their cross-motion for partial summary judgment on the FMLA issue. (R. 37, Pls.' Mot. and Resp.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). When, as in this case, the parties have filed cross-motions for summary judgment, the Court must construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made. *Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008). The existence of an alleged factual dispute will not necessarily defeat a summary judgment motion; "instead, the nonmovant must present, definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

Congress enacted the FMLA to allow eligible employees to take leave for serious health conditions, the birth or adoption of a child, or to care for a qualifying family member with a serious health condition. 29 U.S.C. § 2612(a)(1). The FMLA defines an "eligible employee" as

an employee who has been employed by the employer for at least 12 months, and has at least 1,250 hours of service with the employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A). Although the FMLA does not define "hours of service," the statute specifies that the legal standards established under the Fair Labor Standards Act ("FLSA") shall apply to determine whether an employee meets the hours of service requirement.[6] 29 U.S.C. § 2611(2)(c). The Department of Labor ("DOL") regulation that addresses union-related "hours worked" under the FLSA provides:

> Time spent in adjusting grievances between an employer and employees during the time the employees are required to be on the premises is hours worked, but in the event a bona fide union is involved the counting of such time will, as a matter of enforcement policy, be left to the process of collective bargaining or to the custom or practice under the collective bargaining agreement.

29 C.F.R. § 785.42. Accordingly, MXUU hours could be counted for FMLA eligibility purposes in three possible ways: (1) as "time spent in adjusting grievances" under the language of the regulation; (2) by stipulation in the parties' CBA; or (3) by the "custom and practice" of the parties. *See id.*

### A.  "Time Spent in Adjusting Grievances" under the Regulation

The phrase "time spent in adjusting grievances" is not defined in the regulation, and there are no FLSA cases interpreting the parameters of the phrase. Plaintiffs argue that "adjusting grievances" should be interpreted "broadly to encompass all of the labor-management activities

---

[6] The FLSA uses the term "hours worked," 29 U.S.C. § 2039(o), while the FMLA refers to "hours of service," 29 U.S.C. § 2611(2)(A)(ii). If time that an employee works is deemed "hours worked" under the FLSA, it is also considered "hours of service" under the FMLA. *See* 29 U.S.C. § 2611(2)(c).

6

associated with processing grievances." (R. 39, Pls.' Mem. in Supp. of their Mot. for Partial Summ. J. ("Pls.' Mem."), at 16.) Plaintiffs rely on several DOL opinion letters discussing the FLSA to support their argument. The Court, however, finds Plaintiffs argument unpersuasive. To begin, "interpretations contained in formats such as opinion letters are 'entitled to respect'... but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal citations omitted); *see also Sehie v. City of Aurora*, 432 F.3d 749, 753 (7th Cir. 2005) (explaining there is no "conclusive mystique" in the "informal publications of DOL opinion letters which could be substituted for an act of Congress" and such letters do not warrant *Chevron*-style deference). Furthermore, two of the opinion letters cited by Plaintiffs address time spent in "labor-management committee meetings" and "union negotiations." *See* Opinion Letter of Wage and Hour Division, U.S. Dept. of Labor, 1987 DOLWH LEXIS 40 (July 17, 1987); Opinion Letter of Wage and Hour Division, U.S. Dept. of Labor, 1965 DOLWH LEXIS 244 (Dec. 28, 1965). The Court agrees that these types of activities fall in the category of "adjusting grievances." Time associated with these activities, however, is coded as MXUP time and is already counted toward FMLA eligibility. (R. 40, Pls.' Facts ¶¶ 5, 6.) The opinion letters fail to address the issue in this case, whether time spent by union stewards outside of negotiations and meetings with Defendant is counted as well.

Plaintiffs also cite two other DOL opinion letters from 1946 and 1965. (R. 39, Pls.' Mem., at 16, 18.) Neither letter, however, defines or provides analysis of the term "grievance adjustment." *See* Opinion Letter of Wage and Hour Division, U.S. Dept. of Labor, 1965 DOLWH LEXIS 91 (May 18, 1965); R. 39, Pls.' Mem., Ex. A, Opinion Letter. Furthermore, the 1946 letter is distinguishable from this case. The letter offers the opinion that time employees

7

voluntarily spend in grievance conferences during working hours is "hours worked" under the FLSA. (R. 39, Pls.' Mem., Ex. A.) The letter, however, appears to apply to general employees and does not contain any analysis regarding the particular situation of union stewards. *Id.* General employees are distinguishable from union stewards because stewards, by the nature of their positions, would have to spend much more time in grievance meetings than general employees.

In the 1965 letter, the DOL discusses "grievance processing" in addition to negotiations between employer and employee representatives. 1965 DOLWH LEXIS, at *2. The letter states that such time "*may* have to be counted as hours worked." *Id.* (emphasis added). The opinion goes on to state that time spent by an employee that serves as a union officer "solely with internal union affairs" would stand on a different footing and is not regarded as hours worked for the purposes of the Act. *Id.* at *3. The Court finds that this language suggests that time a union steward spends investigating and evaluating grievances for the Union would not count as hours worked under the Act. The Court will therefore not use any of these DOL opinion letters as a basis to interpret "time spent in adjusting grievances" broadly. *See Christensen*, 529 U.S. at 587 (finding DOL opinion letter did not have persuasive power).

The Court finds further support for a more narrow interpretation of the term "adjusting grievances," in the context of National Labor Relations Act ("NLRA") cases. *See Vanderhoof v. Life Extension Inst.*, 988 F. Supp. 507, 512 (D.N.J. 1997) (the court looked to NLRA cases for guidance on first impression issue of what constitutes a "successor in interest" under the FMLA). Both Plaintiffs and Defendant cite a number of NLRA cases as support for their arguments. (*See* R. 25, Def.'s Mem. in Supp. of its Mot. for Partial Summ. J. ("Def.'s Mem."), at 4-5; R. 39, Pls.'

Mem., at 21-23.) The NLRA references "adjusting grievances" in different sections of the Act. *See* 29 U.S.C. § 152(11); 29 U.S.C. § 158(b)(1)(B); 29 U.S.C. § 159(a). In Section 152(11), a "supervisor" is defined as an individual with the authority "to adjust [employees'] grievances." 29 U.S.C. § 152(11). In determining if an individual is a "supervisor," the National Labor Relations Board ("NLRB") differentiates between the authority to resolve grievances and the acts of receiving and reporting grievances for resolution. *See, e.g., Ken-Crest Services*, 335 N.L.R.B. 777, 778-779 (2001) (ruling that there was no "adjustment of grievances" where manager offered advice and suggestions regarding conflicts and brought grievances to attention of upper management). In addition, grievance evaluation and related activities are viewed as separate and apart from grievance adjustment under the Act. *See NLRB v. Int'l. Brhd. of Elec. Workers*, 481 U.S. 573, 585-86 (1980) (where Court defines § 8(b)(1)(B) activities to include "collective bargaining, grievance adjustment, or some other closely related activity"). Moreover, the language of the NLRA lends support to the contention that the term "adjustment" refers to the resolution of grievances, not the evaluation. The Act provides "any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted . . . as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement." 29 U.S.C. § 159(a). Due to this differentiation between "adjusting" and "evaluating" grievances, the Court is unwilling to find that "time spent in adjusting grievances" should encompass all activities associated with processing grievances by union stewards. Accordingly, the regulation's plain language is not a basis for Plaintiffs to meet the "hours of service" requirement of the FMLA.

**B.      The Parties' CBA and Custom or Practice**

9

Next, Plaintiffs argue that MXUU time should be credited as "hours of service" under the FMLA based on the parties' CBA and the parties' custom or practice. (R. 39, Pls.' Mem., at 18.) Contrary to Plaintiffs' contention, the fact that the CBA requires, and Defendant counts MXUU hours for overtime and benefits purposes, is not determinative that these hours also count towards FMLA eligibility. Crediting MXUU time for overtime and benefits is expressly addressed in the CBA. (R. 40, Pls.' Facts ¶¶ 4, 9.) Nothing in the CBA, however, expressly addresses whether MXUU time is credited under the FMLA.

The Court does find, however, that the parties have a custom or practice of crediting MXUU time for FMLA purposes. It is well-established in labor law that a particular custom or practice can become an implied term of a labor agreement through a period of acquiescence. *Matuskzak v. Torrington Co.*, 927 F.2d 320, 324 (7th Cir. 1991) ("parties to a CBA may tacitly acquiesce to an amendment of the agreement through their course of dealing"); *see also Bhd. of Maint. of Way Employees v. Union Pac. R.R. Co.*, No. 03 C 1639, 2003 U.S. Dist. LEXIS 12138, at *36 (N.D. Ill. July 2003) (". . . the court must interpret [the CBA] to include recognized past practices that establish the 'course of dealing between the parties.'")(citation omitted).

The three elements of time, knowledge, and acquiescence have been found essential to the determination of a custom or practice.[7] *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1070-71 (D. Minn. 2007). Furthermore, "[E]vidence that an issue was raised in union-management negotiations is *one* way, but not the *only* way, to prove knowledge and acquiescence by union

---

[7] Although there are no cases providing guidance regarding the requirements of a "custom or practice" under 29 C.F.R. § 785.42, the phrase has been interpreted as it relates to section 203(o) of the FLSA, which provides a specific exclusion from the calculation of hours worked for clothes and uniform change time. *See* 29 U.S.C. § 203(o).

10

employees." *Id.* at 1071 (emphasis in original); *see also Turner v. City of Phila.*, 262 F.3d 222 (3d Cir. 2001) (where the Third Circuit upheld the district court's finding that a "custom or practice" existed without formal collective bargaining negotiations).

In this case, Defendant claims that there was no "custom or practice" of crediting MXUU-coded time for FMLA purposes based on "mutual, knowing assent," and that to the extent employees received such credit "it was due to happenstance, habit, or inadvertence by local managers." (R. 46, Def.'s Reply in Supp. of its Mot. for Partial Summ. J. and in Opp'n to Pls.' Mot. for Partial Summ. J. ("Def.'s Reply"), at 11.) Defendant argues that it never issued any directive regarding the crediting of MXUU-coded time. *Id.* at 10. Instead, Defendant claims that when the FMLA mechanized system was developed in 2003, MXUU-coded time was counted toward FMLA eligibility based on the "incorrect assumption" of Joe Atilano ("Atilano"), the individual responsible for developing the system. *Id.* Defendant alleges that Atilano incorrectly assumed, based on information that he received about the agreement with regard to MXUU time being credited towards FMLA eligibility for CWA, that such time should also be credited for Union employees. *Id.* When he learned this assumption was incorrect in 2005, the system was reprogrammed to exclude MXUU-coded time for Union employees. *Id.*

Plaintiffs, however, have established that Defendant credited MXUU time toward FMLA eligibility, since at least 1997, a considerable time *before* the implementation of the mechanized system.[8] Plaintiff Employees were granted FMLA leave during periods from 1997 through 2005,

---

[8] The Court makes this finding without reliance on the disputed facts from the declaration of Kevin Curran ("Curran"), Vice President and Assistant Business Manager of the Union. *See* R. 47, Def.'s Resp. to Pls.' Statement of Undisputed Material Facts in Supp. of their Mot. for Partial Summ. J., ¶¶ 23, 24. Defendant asserts that Curran is without personal knowledge for his assertions that between 1993 and 1998 there were no instances reported to the

11

where they would not have met the 1,250-hour requirement without counting MXUU-coded time.[9] (R. 40, Pls.' Facts, ¶ 26.) In addition, the Court is not persuaded by Defendant's argument that the crediting of MXUU time towards FMLA eligibility was the result of "happenstance." Atilano was the Associate Director of HR Operations responsible for the FMLA and leave of absence administration. (R. 46, Def.'s Reply, Atilano Dep., Ex. A at 6.) In this capacity, he oversaw the processing of request for FMLA leave. *Id.* at 15. In his deposition, Atilano states that "there were uniform policies within the internal administrative team, the FMLA processing unit" to handle such requests. *Id.* at 16. Defendant made the decision to grant or deny FMLA leave for a particular employee.[10] This active participation in the FMLA leave process, establishes that the decision to grant MXUU-coded time for FMLA leave was the result of a particular practice of Defendant, not mere "happenstance." *See id.*, Ex. B. *In re Consolidation Coal Co.*, 106 LA 328, 333 (Arb. 1996) (where the NLRB determined a practice did not evolve through happenstance when Company exercised its discretion in making particular decisions).

---

Union where Defendant failed to credit MXUU time toward FMLA eligibility and that if Defendant failed to credit MXUU time between 1998 and 2005, most or all stewards would have been denied FMLA eligibility leave during these periods. *Id.* In contrast, Byrnes, Deborah Maples ("Maples") and Stoner, do have personal knowledge regarding the crediting of MXUU-coded time prior to the granting of their particular FMLA leave periods.

[9] Maples was granted FMLA leave in September, 2000; April, 2001; February, 2002; March, 2003; and February 2004. (R. 40, Pls.' Facts, Ex. E, Maples Decl. ¶ 8.) Byrnes was granted FMLA leave in December, 1997; January, 2001; August, 2004; and May, 2006. (*Id.*, Ex. F, Byrnes Decl. ¶ 8.) Stoner was granted FMLA leave in June, 2002; February, 2003; August, 2004; and January, 2005. (*Id.*, Ex. G, Stoner Decl. ¶ 8.) For the 12-month periods prior to each of these leaves, Maples, Byrnes, and Stoner would not have met the 1,250-hour requirement if their MXUU time did not count toward FMLA eligibility. (*Id.*, Maples Decl. ¶ 8; Byrnes Decl. ¶ 8; Stoner Decl. ¶ 8.)

[10] Whether this decision was made by the FMLA processing unit, a supervisor, or an attendance manager is insignifacant. *See id.*

Furthermore, although Defendant negotiated the issue of crediting MXUU time for FMLA eligibility in contract negotiations with the CWA in 2001 and 2004, (R. 26, Def.'s Facts ¶ 16), it never stated in the 2004 negotiations, or any prior labor contract negotiations with the Union, that additional contract language was necessary to continue to count MXUU time toward FMLA eligibility. (R. 40, Pls.' Facts ¶ 27.) The Court, therefore finds that there was a "custom or practice" of crediting MXUU-coded time as "hours worked" for FMLA eligibility between Defendant and the Union. Accordingly, Plaintiffs have met the threshold jurisdictional requirement of demonstrating FMLA eligibility.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment (R. 37) is GRANTED, and Defendant's motion (R. 23) is DENIED.

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on **February 3, 2009 at 9:45a.m.** to set a firm litigation schedule for this case.

Entered: _____
Judge Ruben Castillo
United States District Court

Dated: **January 14, 2009**

---

[11] Since the Court has determined FMLA eligibility by establishing that MXUU-coded time is "hours worked" under the regulation, we need not address Plaintiffs' argument that the Defendant and the Union should be considered "joint employers" to determine FMLA eligibility. (R. 39, Pls.' Mem. at 4.)

13